IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CONNIE K. MORRIS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No.: 07-0491 (RWR) |
| STEPHEN L. JOHNSON, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF
HIS MOTION TO DISMISS THE COMPLAINT**

Defendant, Stephen L. Johnson, Administrator, United States Environmental Protection Agency ("EPA"), hereby files his reply in further support of his motion to dismiss plaintiff's complaint. Plaintiff's opposition to defendant's motion to dismiss ("Pl.'s Opp'n") consists largely of unsupported hyperbole and misstatements. In her opposition, plaintiff not only fails to cite to recent Supreme Court precedent regarding the proper standard to be applied in considering a dismissal motion, she provides many irrelevant legal arguments and fails to address many of the substantive arguments made by defendant. In short, plaintiff has done nothing to alter the appropriateness of dismissal in this case and defendant's motion should be granted.

**ARGUMENT**

**I. PLAINTIFF HAS FAILED TO SET FORTH THE PROPER STANDARD FOR EVALUATING DEFENDANT'S MOTION TO DISMISS.**

In her opposition, plaintiff cites to Conley v. Gibson, 355 U.S. 41 (1957), as setting forth

the proper standard for review of defendant's motion for dismissal. Pl.'s Opp'n at 2. However, Conley is at best an incomplete statement of the law. As noted in defendant's motion for dismissal ("Def.'s Mot."), at 9-10, in the Supreme Court's most recent discussion of the proper standard of review of a motion to dismiss, the Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted) (emphasis added). Thus, in order for a complaint to survive dismissal, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. (citations omitted). This requires a plaintiff seeking to avoid dismissal to state "circumstances, occurrences and events" that support the legal claim presented rather than merely make a "bare averment" that he is entitled to relief. Id. at 1965 n.3. Dismissal is required if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. As further discussed infra, plaintiff's complaint does not satisfy the Twombly standard.[1]

---

[1] Plaintiff contends that the EEOC Administrative Judge's decision in this matter has no relevance in this lawsuit because this Court considers the case de novo. Pl.'s Opp'n at 3. Plaintiff's statement is partially false for two reasons. First, the case cited by plaintiff, Scott v. Johanns, 409 F.3d 466 (D.C. Cir. 2005), does not state that administrative rulings have no "relevance" in a subsequent federal lawsuit. In fact, that case observed that "[i]n all cases, administrative findings may 'be admitted as evidence.'" Id. at 470. Second, plaintiff's contention is at odds with Supreme Court precedent. In Chandler v. Roudebush, 425 U.S. 840 (1976), a case cited in Scott, the Supreme Court explicitly stated that "[p]rior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial de novo. . . . Moreover, it can be expected that, in light of the prior administrative proceedings, many potential issues can be eliminated by stipulation or in the course of pretrial proceedings in the District Court." Id. at 864 & n.39. Thus, while plaintiff is entitled to de novo review of her claims in this Court, it is simply false that the prior administrative findings in this matter will be "irrelevant" to the issues before this Court.

## II. PLAINTIFF HAS FAILED TO DEMONSTRATE THAT SHE HAS EXHAUSTED HER ADMINISTRATIVE REMEDIES CONCERNING MANY OF HER CLAIMS.

In his motion to dismiss, defendant contended that plaintiff has failed to exhaust her remedies concerning many of the allegations contained in her current complaint. Def.'s Mot. at 10-14. Plaintiff fails to fully comprehend defendant's argument, as evidenced by her recitation of the allegations of her complaint pertaining to her exhaustion of her July 2005 failure to accommodate claim. Pl.'s Opp'n at 3. Defendant did not argue that plaintiff failed to exhaust her claims regarding her July 2005 failure to accommodate claim; rather, defendant contends that plaintiff failed to exhaust her claims regarding the following actions: her supervisors' failure to engage in the interactive process, Compl. ¶ 62; her subsequent assignment to Potomac Yard, id. ¶ 23; her supervisor's request for documentation regarding Plaintiff's alleged disability, id. ¶ 29; her reassignment to EPA East, id. ¶ 52; the various allegations concerning her requests for sick leave and her placement on "absent without leave" ("AWOL") status, id. ¶¶ 33-52, as well as the February 5, 2007 proposal to terminate her, id. ¶ 56. These claims have not been before the agency for the requisite 180 days and dismissal is therefore required. See, e.g., Easton v. Snow, No. Civ.A. 04-2038, 2006 WL 1774552, at *2 (D.D.C. June 26, 2006) ("A complainant may only seek relief in federal court after receiving an adverse final decision from the agency or after a written complaint had been pending for at least 180 days.") (citing to Title VII and ADEA provisions).[2]

---

[2]Plaintiff contends that "the law is clear that an administrative charge is deemed to include any matter that could be investigated during the pendency of the charge that is reasonably related to it." Pl.'s Opp'n at 4. According to plaintiff her administrative charge "was pending from August 10, 2005, through December 19, 2006." Id. Even assuming this was the correct legal standard, it is clear that plaintiff's charge could not include the proposal to terminate her, which occurred in February 2007, Compl. ¶ 56, or her subsequent termination, as that occurred on March 10, 2007. Def.'s Mot., Ex. 2.

Realizing the reality of her predicament, plaintiff contends that "it is not necessary to exhaust administrative remedies with respect to retaliation." Pl.'s Opp'n at 5. Plaintiff's argument is dubious at best because she relies upon case law pre-dating the Supreme Court's ruling in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002), which held that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." Id. Plaintiff contends that Morgan is limited in application to cases dealing with "continuing violations" or "pattern of discrimination" doctrines. Id. Plaintiff is simply wrong on this point. Morgan in fact involved claims of "discrete discriminatory and retaliatory acts . . . ." 536 U.S. at 104. The case makes clear that an aggrieved employee must exhaust his or her administrative remedies as it concerns each "discrete retaliatory or discriminatory act . . . ." Id. at 110 (emphasis added). There is simply nothing in Morgan that indicates its reasoning does not apply to claims of retaliation, and in fact courts have held that Morgan extends to such claims. See, e.g., Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 138 (D.D.C. 2004) (applying Morgan rationale to claims of retaliation and holding that "[i]ndividual acts of retaliation that form the basis of retaliation claims also are included within the Supreme Court's list of discrete discriminatory acts and therefore, any claim stemming from those acts must be administratively exhausted."), amended on reconsideration in part, 400 F. Supp. 2d 257 (D.D.C. 2005). Notably, the Coleman-Adebayo court rejected the plaintiff's argument that Morgan's holding should not be applied to her discrete claims of retaliation:

> Plaintiff offers no reason for the Court to treat most retaliation claims, including hers, differently from other complaints of discrete acts. . . . In short, there is no relevant distinction between Morgan's holding that plaintiffs may not revive a stale discrimination claim by

4

> tying it to a timely-filed claim, and defendant's argument here that the plaintiff should not be permitted to avoid the requirement of exhaustion merely because this latest act of alleged discrimination –arbitrarily removing the reasonable accommodation of working at home in retaliation for filing discrimination complaints– is tied to earlier, exhausted complaints. . . . Accordingly, in light of Morgan the Court concludes that the plaintiff has not exhausted her claim of retaliation that stems from EPA's November 2003 transfer of the plaintiff to an EPA office. The Court therefore will grant defendant's motion to dismiss plaintiff's retaliation claim.

Id. at 138-39 (footnote omitted).³ Indeed, courts in this district have also applied Morgan's rationale in the retaliation context. See, e.g., Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 149 (D.D.C. 2005) (holding that Morgan extends to claims of retaliation and requiring plaintiff to establish that "he exhausted his administrative remedies with respect to each discrete act of retaliation."); Camp v. District of Columbia, No. Civ.A. 04-234, 2006 WL 667956, at *8 (D.D.C. Mar. 14, 2006) (holding that Morgan extends to plaintiff's claim of retaliatory termination and denying plaintiff's request to amend her complaint to include her alleged retaliatory termination as such amendment would be futile); Adams v. Mineta, No. Civ.A. 04-856, 2006 WL 367895, at *5 (D.D.C. Feb. 16, 2006) (holding that Morgan applied to claims of retaliation and "plaintiff's failure to exhaust her administrative remedies bars her from litigating her claim of retaliation before this Court in the first instance."); Nurriddin v. Goldin, 382 F. Supp. 2d 79, 92 (D.D.C.

---

³Ignoring the Coleman-Adebayo court's application of Morgan to a retaliation claim, plaintiff seizes upon the court's footnote in which the court suggested that where, for example, an employee is denied his request to attend religious services, each subsequent denial would not have to be independently exhausted. Coleman-Adebayo, 326 F. Supp. 2d at 139 & n.3. Plaintiff misinterprets this statement by the court as "recognizing that a claimant is not required to file successive administrative charges when the basis for the alleged discrimination is the subject of a pending administrative action." Pl.'s Opp'n at 5. That is simply not the case. The court was envisioning a scenario "in which the discriminatory acts or retaliatory conduct is so pervasive and ongoing that the exception to exhaustion recognized in Morgan for hostile-work environment cases may be applied directly or extended by analogy." Coleman-Adebayo, 326 F. Supp. 2d at 139 & n.3. This footnote by the Coleman-Adebayo court in no way altered the court's holding that Morgan requires exhaustion of discrete claims of retaliation. Id. at 138-39.

2005) (holding that <u>Morgan</u>'s reasoning applies to "all discrete acts of discrimination <u>or retaliation</u>[,]" and noting that "<u>Morgan</u> rejected plaintiff's pattern and practice argument for discrete acts of discrimination <u>or retaliation</u> that had not been separately exhausted but were 'sufficiently related' to a properly exhausted claim.") (emphasis added) (citing <u>Morgan</u>, 536 U.S. at 105); <u>Graham v. Gonzales</u>, No. Civ.A. 03-1951, 2005 WL 3276180, at *5 (D.D.C. 2005) (holding that plaintiff's termination was a "discrete act" for which he was required to exhaust his administrative remedies and rejecting plaintiff's argument that his termination was in fact the "culmination" of his hostile work environment claim and thus did not have to be separately exhausted.). Cf. <u>Jones v. University of the District of Columbia</u>, No. Civ.A. 05-1187, 2007 WL 2332311, at *4 (D.D.C. Aug. 17, 2007) (holding that even if the "reasonably related" test was still good law, it "should be narrowly read after <u>Morgan</u> . . . ." and finding that allegations were not "reasonably related to the allegations in the EEOC complaint of discrete discriminatory actions taken within a specific timeframe.") (citations omitted); <u>Hazel v. WMATA</u>, No. Civ.A. 02-1375, 2006 WL 3623693, at *8 (D.D.C. Dec. 4, 2006) (holding that plaintiff's subsequent allegations "fit within the narrow category of claims . . . ." that had been previously asserted in her prior administrative complaint).

      Thus, despite her unsupported contentions to the contrary, plaintiff was required to exhaust her administrative remedies pertaining to her claims of retaliation. Her failure to do so precludes her action in this Court as it concerns those allegations.[4]

---

[4] Plaintiff's complaint fails to provide defendant, or the Court, with notice of the claims she alleges constitute her count of retaliation. Rather, with the exception of the paragraphs pertaining to her failure to accommodate count, plaintiff incorporates the entirety of the complaint's allegations in her retaliation count. Compl. ¶ 64.

### III. PLAINTIFF CANNOT ESTABLISH A VIABLE CLAIM UNDER THE REHABILITATION ACT.

Plaintiff cannot establish a claim under the Rehabilitation Act for failure to accommodate. Aside from failing to invoke the proper statutory authority for such a claim,[5] plaintiff cannot establish a prima facie case of failure to accommodate under the Rehabilitation Act because she is not disabled within the meaning of the Act; she is not otherwise qualified under the Act; and she did not request (and was therefore not denied) a reasonable accommodation. Nothing contained in plaintiff's opposition proves the contrary.

#### A. PLAINTIFF IS NOT DISABLED.

To qualify as a disabled individual under the Rehabilitation Act, plaintiff must demonstrate that she has an impairment that had a "permanent or long-term[ ]" impact. Toyota Motor Manufacturing, Kentucky Inc. v. Williams, 534 U.S. 184, 198 (2002) (citing 29 C.F.R. § 1630.2(j)(2)(ii)-(iii) (2001)). Furthermore, the alleged impairment must "substantially limit" one or more of plaintiff's "major life activities . . . ." 29 U.S.C. § 705(20)(B).

In his motion, defendant clearly articulated why plaintiff's alleged impairment – which she has described as "a yeast sensitivity which in turn causes her to be sensitive to small concentrations of other molds and even chemicals in the workplace and elsewhere[,]" Compl. ¶

---

[5]Plaintiff implicitly concedes that she has failed to invoke the proper statutory citation for a Rehabilitation Act claim. Pl.'s Opp'n at 10 ("Defendant seeks to capitalize on the confusion inherent in the provisions for private rights of action under the Rehabilitation Act by urging that plaintiff cited the wrong code section in her complaint."). It is not apparent why plaintiff would be "confused" concerning the proper statutory citation for her claim when the District of Columbia Circuit has clearly held that section 504, the section cited by plaintiff, does not apply to federal employees. Taylor v. Small, 350 F.3d 1286, 1291 (D.C. Cir. 2003). Thus, plaintiff's citation to Breen v. Dep't of Transportation, 282 F.3d 839 (D.C. Cir. 2002), Pl.'s Opp'n at 10 & n.2, is simply not persuasive, as it predates Taylor. While plaintiff contends that she may correct this pleading defect by seeking to amend her complaint, any such amendment would be futile in light of the other defects with her complaint, discussed infra, and thus, as in Taylor, dismissal is appropriate.

12, fails to pass muster under the Rehabilitation Act.[6]  First, plaintiff fails to allege (and cannot demonstrate) that her alleged impairment substantially limits one or more of her major life activities.  Based on plaintiff's own arguments, her alleged impairment is essentially "cured" by permitting her to work at home.  Compl. ¶ 17 ("Ms. Morris and her physician requested that she be allowed to perform substantially all of her job duties from her home as a reasonable accommodation."); Pl.'s Opp'n at 12 (""[P]laintiff . . . does not experience symptoms of her condition in her residence . . . where she obviously has sufficient control over her environment and activities to eliminate the cause of her symptoms . . . .").[7]  Plaintiff does not address, never mind distinguish, the District of Columbia Circuit's holding in Haynes v. Williams, 392 F.3d

---

[6] Plaintiff stresses that she has alleged that she suffers from the impact of her alleged impairment at work and "elsewhere[,]"  Pl.'s Opp'n at 11, although she does not make the Court or defendant privy to exactly where else she suffers these alleged symptoms.  This failure to specify the locations where she allegedly suffers from her impairment strengthens defendant's argument that plaintiff has failed to assert a proper claim for relief.  See Twombly, 127 S. Ct. 1965 & n.3 (holding that in order to avoid dismissal, a plaintiff is required to state "circumstances, occurrences and events" that support the legal claim presented rather than merely make a "bare averment" that she is entitled to relief).  Furthermore, any allegation that plaintiff suffers from alleged symptoms outside of the EPA workplace is belied by the allegations of her 2005 and 2007 administrative complaints, wherein plaintiff described her alleged impairment as a "workplace sensitivity . . . ."  Def.'s Mot., Exs. 2 & 5.  Plaintiff's contention that defendant has used a "strained reading" of her administrative complaint of discrimination, wherein she specifically described her alleged disability as a "workplace sensitivity" and has taken this description "from whole cloth" is nonsensical and belied by simple reference to plaintiff's administrative complaints.  Def.'s Mot., Exs. 2 & 5.

[7] Plaintiff contends that "[d]efendant's assertion that [p]laintiff is 'allergic to her workplace' . . . is an absurdity."  Pl.'s Opp'n at 12.  According to plaintiff, her condition, "by reasonable inference, limits plaintiff in a broad range of activities such as travel and indoor recreation – indeed, any activity that requires plaintiff to be indoors for extended periods in an atmosphere where common allergens might be present."  Pl.'s Opp'n at 12.  These contentions should be disregarded by the Court for several reasons.  First, plaintiff never alleges in her complaint that she is substantially limited in the activities of "travel" and "indoor recreation."  Second, plaintiff fails to establish that "travel" and "indoor recreation" are indeed the types of "major life activities" encompassed by the Rehabilitation Act.  Third, plaintiff's claim that she cannot enjoy "indoor recreation" is belied by her claim and request to work permanently from home.  Clearly, plaintiff is able to enjoy "recreation" inside her home "where [, according to plaintiff,] she obviously has sufficient control over her environment and activities to eliminate the causes of her symptoms . . . ."  Pl.'s Opp'n at 12.

478, 483 (D.C. Cir. 2004), wherein the court held that "[i]f the impact of an impairment can be eliminated by changing the address at which an individual works, that impairment is neither permanent nor long term."[8]  Here, despite her vague reference to allegedly experiencing the impact of her alleged impairment "elsewhere," it is clear that plaintiff's allegations solely concern the alleged impacts she suffers only when she reports to work at EPA work sites. Compl. ¶ 12 (noting that plaintiff's "physicians have reported to EPA the nature of her condition, and reasons why it is harmful to her health to report to work at various EPA work sites.") (emphasis added); ¶ 22 (alleging that plaintiff "had her most severe reactions" at EPA headquarters); ¶ 24 alleging that plaintiff "suffered numerous severe allergic reactions in her workplace . . . ."); ¶ 26 (noting that plaintiff "requested advance sick leave . . . for a 'workplace allergic reaction.'") (emphasis added); ¶ 36 ("Ms. Morris remained ill . . . because of a workplace reaction. . . .") (emphasis added); ¶ 37 ("Ms. Morris was struggling to work, and continually becoming ill because of her workplace environment . . . .") (emphasis added); ¶ 52 (alleging that plaintiff had "her most severe reactions" at the EPA East building); ¶ 53 (alleging that one of plaintiff's doctors recommended that plaintiff "not return to the building which will trigger these symptoms."). The clear allegations of plaintiff's complaint demonstrate that her alleged impairment arises only when she is working in the EPA's building and thus, she does not

---

[8] Plaintiff fails to address defendant's arguments that she does not have a "record of an impairment that significantly limits one or more of her major life activities" or that she was not regarded by EPA as having such an impairment. Def.'s Mot. at 19-21. By failing to address these arguments, she has effectively conceded them. Hopkins v. Women's Div., General Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997)); see also United States v. Real Prop., Parcel No. 03179-005R, No. Civ. A. 01-0706, 2003 WL 224053382 at *12 (D.D.C. Oct. 21, 2003); Bancoult v. McNamara, 227 F. Supp. 2d 144, 149 (D.D.C. 2002).

have an impairment that is long-term or permanent.  She is, therefore, not disabled within the meaning of the Rehabilitation Act.[9]

### B. PLAINTIFF IS NOT OTHERWISE QUALIFIED FOR HER POSITION.

According to plaintiff, her job position as a "senior member" of the Federal Register Staff did not really require her to work in the office.  Compl. ¶ 10; Pl.'s Opp'n at 14.  This, plaintiff contends, is supported by the position description that pertains to her position and the fact that she has, in the past, worked from home.  Pl.'s Opp'n at 14.

In his motion to dismiss, defendant explained why plaintiff's position indeed requires her to be at the office.  Def.'s Mot. at 21-22.  Plaintiff fails to address defendant's contention that she cannot "provide leadership in executing editorial policy and priorities . . . ." as well as "coordinat[e] the document preparation efforts of other information liaison specialists . . . ." working from home.  Def.'s Mot., Ex. 3, at 2.  Rather, she relies on the self-serving allegations of her complaint to support her baseless claim that her position description "require[s] neither physical presence nor face-to-face contact with others, either explicitly or implicitly."  Pl.'s Opp'n at 14 (citing Compl. ¶ 10).  As previously noted, supra, at 2, even at the dismissal stage, plaintiff must do more than make a "bare averment" that she is entitled to relief and this requires more than "a formulaic recitation of the elements of a cause of action . . . ."  Twombly, 127 S. Ct. at 1964-65.

---

[9]Plaintiff contends her alleged impairment causes her to have "problems with walking, thinking, elevated blood pressure and swelling."  Compl. ¶ 12.  Assuming these are all major life activities, at no time does plaintiff contend that these problems are permanent or long-term, notably as they are alleviated by being in her home.  The significance of plaintiff's citation to Tangires v. John Hopkins Hosp., 79 F. Supp. 2d 587 (D. Md. 2000), aff'd, 230 F.3d 1354 (4th Cir. 2000), is unclear as the court held in that case that the plaintiff's asthma was not a disability under the ADA because it was "correctable by medication . . . [,]" and the court did not address "chemical sensitivities" as alleged by plaintiff.  Id. at 596.

Next, pertaining to the issue of hardship, plaintiff points to cases in which a "genuine issue of material fact" has been found where there is evidence that an employer has offered some employees the accommodation sought by the plaintiff under similar circumstances. Pl.'s Opp'n at 15. This argument is a red-herring for several reasons. First, defendant never contended in his motion that providing the proposed accommodation would pose an "undue hardship"; defendant's argument is that the accommodation requested is unreasonable per se because it would eliminate the essential functions of plaintiff's position. Def.'s Mot. at 23-24. Second, defendant has filed a motion to dismiss, not one for summary judgment, so creation of a "genuine issue of material fact" is not the relevant standard. Rather, dismissal is required if the complaint fails to establish a claim "that is plausible on its face." Twombly, 127 S. Ct. at 1974. In any event, the cases cited by plaintiff are inapposite to this situation because they involved situations where employees in similar job positions to the plaintiff were provided with accommodations sought by and denied to the plaintiff. See, e.g., Breen v. Dep't of Transportation, 282 F.3d 839, 843 (D.C. Cir. 2002) (holding there was a "genuine issue of material fact" regarding whether employee was required to work in office everyday where plaintiff alleged that the employer "allowed a number of other employees with similar jobs in her department to work alternative schedules that permitted them to be out of the office during normal business hours.") (emphasis added); Woodman v. Runyon, 132 F.3d 1330, 1346 (10th Cir. 1997) (holding that plaintiff had "demonstrated a factual dispute . . . by providing evidence that [the employer] has accommodated another employee in a situation similar to her own . . . .") (emphasis added) (citations omitted). Plaintiff does not allege that other employees similarly situated to herself have been granted full-time work at home accommodations. Rather, she

alleges that the "EPA has offered to accommodate other disabled employees with permanent work-at-home arrangements . . . including members of Mr. Richards' own Federal Register staff." Compl. ¶ 15.  Plaintiff fails to contend that these employees were in any way similarly situated to her – i.e., had the same job position, duties and responsibilities.  Thus, her attempt to create a "genuine issue of fact," if indeed that were appropriate at this stage of the proceedings, fails.[10]

Plaintiff next contends that "[d]efendant cannot establish, either at the pleading stage, or, plaintiff contends, at trial, that essential functions of her position prevent her from working with the accommodation she requested or some variant of it."  Pl.'s Opp'n at 15.  Plaintiff then goes on to cite the EEOC Regulations, 20 C.F.R. § 1630.2(n), which she contends "govern the determination of what constitutes an essential function of a position."  Id. at 16 (citing Taylor v. Rice, 451 F.3d 898, 906 (D.C. Cir. 2006).[11]  Plaintiff's argument again misses the mark.  First,

---

[10]The other cases cited by plaintiff are similarly unhelpful here.  For example, in Swanks v. WMATA, 179 F.3d 929, 934 (D.C. Cir. 1999), cert. denied, 120 S. Ct. 614 (1999), the appellate court affirmed the district court's denial of judgment as a matter of law and affirmed a jury verdict finding that the plaintiff-employee was terminated because of his disability.  In doing so, the court quoted from a Seventh Circuit case finding that summary judgment is not appropriate where there is evidence by the employee that the policy relied upon by the employer is followed "selectively."  Id. at 934 (quoting Baert v. Euclid Beverage, Ltd., 149 F.3d 626 (7th Cir. 1998)).  Swanks, however, is not applicable to the present proceeding as there is no "policy" being proffered by the defendant; nor is this case in the summary judgment stance.  In addition, in Walsh v. United Parcel Service, 201 F.3d 718 (6th Cir. 2000), the court actually affirmed the district court's grant of summary judgment in favor of the employer, finding that the employee's request for "continued leave was an unreasonable accommodation."  201 F.3d at 728.  In reaching its holding the court distinguished Cehrs v. Northeast Ohio Alzheimer's Research Ctr., 155 F.3d 775 (6th Cir. 1998), a case relied upon by the plaintiff for the proposition that the fact the employer had granted other employees leave created a genuine issue of material fact as to whether granting the plaintiff's request would have created an undue burden or would have been a reasonable accommodation for the plaintiff.  Walsh, 201 F.3d at 726.

[11]While the Taylor court did cite to the EEOC regulations, it did not make any pronouncement that these regulations "govern the determination of what constitutes an essential function of a position." 451 F.3d at 906.

12

the issue is not whether defendant can establish that the accommodation that plaintiff requested – i.e., to work permanently from home – would have prevented her from working in general. Rather, plaintiff has the duty to establish that she was otherwise qualified to perform the essential functions of her position with or without a reasonable accommodation. See, e.g., Brown v. Snow, 407 F. Supp. 2d 61, 67 (D.D.C. 2005) (Noting that plaintiff must establish a prima facie case of discrimination under the Rehabilitation Act by showing, in part, that "with reasonable accommodation he could perform the essential functions of the position."); Dorchy v. WMATA, 45 F. Supp. 2d 5, 13 (D.D.C. 1999) (holding that plaintiff's "failure to establish that he can perform the essential functions of his job, with or without reasonable accommodation, negates his ability to establish a prima facie case of discrimination under the [ADA] . . . [and] the Rehabilitation Act.") (citing 29 U.S.C. § 794(d)). Thus, plaintiff, at the pleading stage, has the burden to establish that her request to work permanently from home was reasonable and enabled her to perform the essential functions of her position, which she has simply failed to do.

  Second, even pursuant to the EEOC regulations cited by plaintiff, it is apparent that plaintiff's position required her to work in the office. The term "essential functions" is defined as "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Evidence regarding whether a particular function is essential includes, among other factors, "[t]he employer's judgment as to which functions are essential"; the "written job descriptions prepared . . . ."; "the amount of time spent on the job performing the function," and the "consequences of not requiring the incumbent to perform the function." Id. § 1630.2(n)(3). As previously discussed in his motion for dismissal, defendant's job position description clearly required that plaintiff be in the office to "provide leadership" to

13

other staff members; and to "coordinate the document preparation efforts of other information liaison specialists . . . ." Def.'s Mot., Ex. 3, at 2. Furthermore, the work was "work stationed oriented" and required "use of dedicated specialized equipment." Id. at 10. Plaintiff does not dispute these requirements. Indeed, her citations to paragraphs of the complaint wherein she alleges that her supervisor stated that it was "necessary" for plaintiff to be present at an EPA facility to perform her duties supports a finding that attendance in the office was required and consistent with her employer's judgment, one of the factors set forth in 29 C.F.R. § 1630.2(n)(3)(I).[12] See also Rosell v. Kelliher, 468 F. Supp. 2d 39, 45 (D.D.C. 2006) (noting that "one of the fundamental requirements of any position is reporting to work[,]" and holding that plaintiff was not a qualified individual under the Rehabilitation Act because his request to report to work when he was medically able was unreasonable in light of his position description that required him to participate in "team projects," interact with others inside and outside the agency, provide "guidance" to others, and perform tasks under "short deadlines.") (emphasis added), aff'd, No. Civ.A. 06-5168, 2006 WL 4056985, at *1 (D.C. Cir. Oct. 20, 2006).[13] For these

---

[12] Plaintiff provides unsupported statements that were allegedly made by her supervisor regarding the grant of work-at-home accommodations for other employees and contends that defendant failed to cooperate in the "interactive process" with plaintiff. Pl.'s Opp'n at 18-19. However, the fact that plaintiff herself was permitted to work from home on occasion, demonstrates that she was in fact accommodated. Compl. ¶ 11. Defendant also provided other accommodations to plaintiff. Id. ¶¶ 11, 30. It is defendant's position, however, that permitting plaintiff to permanently work from home was not a reasonable accommodation.

[13] Plaintiff contends that defendant fails to quote the salient portion of the Carr v. Reno decision, where the court stated that "that an essential function of any government job is an ability to appear for work (whether in the workplace or, in the unusual case, at home) . . . ." 23 F.3d 525, 530 (D.C. Cir. 1994). Plaintiff goes on to contend that "defendant today can hardly characterize working from home or another remote location as 'unusual . . . .'" Pl.'s Opp'n at 20. Yet, plaintiff fails to cite the Carr court's opinion that it was "unreasonable" to ask the employer to "put up with" the plaintiff's "poor attendance" or to "refer an unqualified employee to another government agency for employment." 23 F.3d at 530. Furthermore, while telecommuting is an option the agency provides to some employees, that does not translate into a finding that such an option was viable in plaintiff's situation, in light of the essential

reasons, plaintiff has failed to demonstrate that she was otherwise qualified to perform the essential functions of her position, with or without accommodation.

    **C.    PLAINTIFF'S REQUEST TO WORK PERMANENTLY FROM HOME AS A SENIOR MEMBER OF THE FEDERAL REGISTER STAFF WHO WAS RESPONSIBLE FOR COORDINATING THE EFFORTS OF OTHERS WAS PER SE UNREASONABLE.[14]**

An accommodation that eliminates the essential duties of an employee's position is per se unreasonable. This is so because "[t]he duty to accommodate does not require an employer to relieve the employee of any essential functions of the job or modify the actual duties." Clayborne v. Potter, 448 F. Supp. 2d 185, 191-92 (D.D.C. 2006). See also Mulloy v. Acushnet Co., 460 F.3d 141, 153 (1st Cir. 2006) (holding that employee's request to work remotely was "per se unreasonable" because his physical presence was "an essential function of his job . . . .").

In her opposition, plaintiff does not directly address defendant's argument that her request to permanently work from home was per se unreasonable because it would have eliminated the essential functions of her position, which required her appear for work. Rather,

---

functions of her position.

[14]Plaintiff devotes over eleven pages of her opposition to arguing that the defendant never accommodated plaintiff and that defendant failed to engage in the interactive process. Pl.'s Opp'n at 20-31. However, because defendant argues in his motion that (a) plaintiff is not an individual with a disability, and (b) plaintiff is not an otherwise qualified individual with a disability, defendant had no duty to accommodate plaintiff or engage in the interactive process, and thus these issues raised by plaintiff are simply not pertinent in resolving defendant's motion to dismiss. More importantly, however, plaintiff's claims are belied by the allegations of her own complaint wherein she herself reveals that she was in fact accommodated and that the defendant engaged in the interactive process with her. Compl. ¶ 11 ("In addition to being allowed to work from home temporarily in 2004 and 2005, Ms. Morris was assigned to work in the Crystal Station "clean space" for a number of months . . . ."); ¶ 16 (noting that plaintiff's supervisor "has worked closely with [plaintiff] when she was working primarily from home, directing her work . . . ."); ¶ 22 (noting that plaintiff was assigned to work at a "clean space . . . which was operated by EPA with various environmental limitations[,] and she was "generally able to work in the 'clean space.'"); ¶ 51(l) (EPA provided plaintiff with 200 hours paid leave through EPA's Leave Bank Program). Thus, plaintiff's contention that she was not accommodated and that defendant failed to engage in the interactive process with her are patently false and not worthy of further rebuttal.

15

plaintiff instead contends that "[n]o employer, especially one as large and wide-ranging as the EPA, can refuse to consider a work-at-home accommodation out of hand." Pl.'s Opp'n at 31. Even if this statement addressed defendant's argument, which it does not, plaintiff fails to provide citations that support this statement. For example, Humphrey v. Memorial Hosp. Ass'n, 239 F.3d 1128, 1136-37 (9th Cir. 2001), does not discuss whether an employer's size is relevant in the employer's consideration of a request to work at home. At most, the Humphrey court noted that "[c]ourts have taken different approaches toward working at home as an accommodation" and determined it would follow the "approach taken by the EEOC in its Enforcement Guidance." Id. at 1137 & n.15. Importantly, as quoted by plaintiff, the Humphrey court recognized that "[w]orking at home is a reasonable accommodation when the essential functions of the position can be performed at home and a work at home arrangement would not cause undue hardship for the employer." Id. at 1136 (emphasis added). Nor does Carr support the proposition that size requires an employer to consider a work at home accommodation, particularly when that accommodation would eliminate the essential functions of the employee's job. Plaintiff here has simply failed to demonstrate that her allegations "raise a right to relief above the speculative level . . . ." Twombly, 127 S. Ct. at 1964-65.

IV.  **PLAINTIFF HAS CONCEDED THAT HER RETALIATION CLAIM FAILS TO STATE A CLAIM FOR RELIEF AND, IN ANY EVENT, SHE CANNOT ESTABLISH CAUSALITY.**

Defendant previously argued in his motion to dismiss that plaintiff fails to state a claim for retaliation under the Rehabilitation Act. Def.'s Mot. at 27. Defendant first established that plaintiff failed to allege that she suffered any "materially adverse consequences" that would dissuade a reasonable worker from making or supporting a charge of discrimination. Def.'s Mot.

at 26.  Plaintiff, in her opposition, fails to address this argument.  Rather, as discussed infra, she devotes her time to arguing that she has established "temporal proximity" sufficient to support a claim of retaliation.  Therefore, plaintiff has tacitly conceded defendant's argument that she has failed to assert any "materially adverse consequences" as required for a claim of retaliation and the Court may grant dismissal of count II of the complaint on that basis alone.  Hopkins v. Women's Div., General Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997)); see also United States v. Real Prop., Parcel No. 03179-005R, No. Civ. A. 01-0706, 2003 WL 224053382 at *12 (D.D.C. Oct. 21, 2003); Bancoult v. McNamara, 227 F. Supp. 2d 144, 149 (D.D.C. 2002).   Second, even assuming she could demonstrate that she suffered materially adverse consequences, plaintiff's arguments in support of the "temporal proximity" are simply not persuasive.  Plaintiff contends that "[n]o court has established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for the purpose of establishing a causal connection."  Pl.'s Opp'n at 33.  Yet, the District of Columbia Circuit has clearly held that an "eight or nine-month gap" between protected activity and the alleged retaliation is "far too long[,]" to establish causality.  Mayers v. Laborers' Health & Safety Fund, 478 F.3d 364, 369 (D.C. Cir. 2007).  See also Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case [of retaliation] uniformly hold that the temporal

proximity must be 'very close[.] . . . Action taken (as here) 20 months later suggests, by itself, no causality at all.") (citations omitted).

Plaintiff does not address the Mayers decision. Instead, she cites to Hayes v. Shalala, 902 F. Supp. 259, 264 (D.D.C. 1995), in which the court held that because the employee did not apply for a position until two years after the settlement, the court would not "preclude the inference of causality . . . ." because that was the first time plaintiff was in fact vulnerable to retaliation. However, the Hayes decision pre-dates the Supreme Court's pronouncement that the temporal proximity must be "very close." Breeden, 532 U.S. at 273-74. Furthermore, assuming Hayes remains good law, no circumstances exist in this case and plaintiff that would warrant the court finding an exception to the requirement that the temporal proximity between plaintiff's alleged protected activity and the alleged retaliation be very close. The other cases cited by plaintiff are similarly unhelpful. Plaintiff does not point the Court to any allegations in her complaint that might constitute the "additional circumstances" that she believes "may extend the amount of time between protected activity and adverse action from which retaliation may be inferred . . . ." Pl.'s Opp'n at 24.

Second, plaintiff contends that "retaliatory motive may be proved by circumstantial evidence, including evidence that the defendant's stated reason for adverse action was pretextual, combined with evidence of the prima facie case[.]" Pl.'s Opp'n at 33 (citing St. Mary's Ctr. v. Hicks, 509 U.S. 502, 511 (1993). Plaintiff's citation to Hicks is particularly puzzling as that case did not address claims of retaliation, but dealt with race discrimination claims. Id. at 504. In any event, plaintiff here has not presented any "circumstantial evidence" that can be relied upon to salvage her deficient retaliation claims. Here, assuming the Court considers actions that have not

been properly exhausted, there is no basis on which to infer a causal connection between plaintiff's alleged prior EEO activity in 2005, her transfer in 2006, and her eventual termination in 2007.

## CONCLUSION

For the foregoing reasons, as well as those set forth in his initial motion to dismiss, defendant requests that plaintiff's complaint be dismissed in its entirety for failure to state claims upon which relief can be granted.

Respectfully submitted,

/s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT

Of Counsel:

Nancy J. Dunham
United States Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Room 7454F
Washington, DC 20460