### United States District Court for the District of Columbia

| | | |
|---|---|---|
| Connie K. Morris, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07-00491 (RWR) |
| v. | ) | |
| | ) | |
| Stephen L. Johnson, Administrator, | ) | |
| United States Environmental | ) | |
| Protection Agency | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### Memorandum Opposing Motion to Dismiss

Plaintiff Connie K. Morris, by counsel undersigned, opposes defendant's motion to dismiss her first amended complaint.

EPA moved to dismiss the original complaint on July 23, 2007, and was well aware at that time that Ms. Morris had exhausted her administrative remedies with respect to her termination, by initiating EEO counseling and filing a formal administrative charge with EPA's Office of Civil Rights. Fully aware that the Office of Civil Rights had dismissed the charge, EPA nonetheless argued in its first motion that "these claims were not timely exhausted . . . because they have not been pending before the Agency for the requisite 180 days." (Motion to Dismiss, 7/23/07, at 12.) EPA now asserts a conflicting position: that Plaintiff should have amended her complaint not only before the expiration of 180 days from the filing of her administrative charge, but within 30 days of its dismissal, or by June 7, 2007 (Motion to Dismiss, 10/30/07, at 12). EPA is judicially estopped from taking such conflicting positions.

Moreover, if any of EPA's highly technical attacks on the original complaint had even arguable merit, the first amended complaint has removed any possible ground for dismissal, and EPA's second motion to dismiss is nothing short of specious. On the merits of the pleading,

while the original complaint clearly alleged that EPA itself determined that Ms. Morris was a qualified individual with a disability, and alleged the nature of her disability and the limitations it imposed, the amendment addressed any of EPA's criticisms that might have remained by, *inter alia*, alleging the effects of Ms. Morris' disability and the limitations it imposes on additional major life activities (First Am. Cplt. ¶12), and that she does not experience the effects of her disability only in the workplace (*id*., ¶14).

## I. Summary of Facts and Procedural Background

### A. Factual Background

This is an action for failure to accommodate a severe and life threatening disability, that EPA itself determined to be a qualifying disability. Although Ms. Morris' position involved mainly computer-based work, which she performed for long periods of time in a location remote from her work group, EPA steadfastly refused to consider extending to Ms. Morris a recognized accommodation, working from home either on a full-time, part-time, or periodic basis. At no time did EPA engage in good faith in an interactive process to identify an accommodation that would enable Ms. Morris to do her job. After Plaintiff's first administrative case was resolved against her, defendant terminated her. The original complaint, and first amended complaint, allege additional facts in detail which will be analyzed throughout the discussion sections below.

### B. Procedural Background

Ms. Morris filed an administrative charge of discrimination with her employer's Office of Civil Rights on August 10, 2005, within 45 days of receiving an unreasonable and inadequate accommodation in response to her application for a reasonable accommodation under the Rehabilitation Act. Her administrative case was resolved against her on or about December 19, 2006, and she filed this action within 90 days thereafter. Shortly before this action was filed, defendant terminated Plaintiff's employment. In her complaint, Ms. Morris alleged that her

employment was terminated because of her disability, but Plaintiff also sought counseling with

the defendant's Office of Civil Rights within 45 days following her termination, and filed a

further administrative charge, as a precautionary measure.  Defendant, by its Office of Civil

Rights, has dismissed that charge on the ground that it is the subject of this action.

After Ms. Morris exhausted her administrative remedies, EPA nonetheless moved to

dismiss her original complaint on July 23, 2007.  While the motion to dismiss was pending, Ms.

Morris filed a first amended complaint, on October 23, 2007.  EPA filed its second motion to

dismiss on October 30, 2007.

## II.  Discussion

### A.    Standard on a Motion to Dismiss

On a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal

Rules of Civil Procedure, the Court assumes the truth of the material facts as alleged in the

complaint, *see Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325, 111 S. Ct. 1842, 114 L. Ed. 2d

366 (1991), and the "complaint should not be dismissed unless plaintiffs can prove no set of

facts in support of their claim which would entitle them to relief."  *Kowal v. MCI Commc'n*

*Corp.*, 16 F.3d 1271, 1276, 305 U.S. App. D.C. 60  (D.C. Cir. 1994); *see also Conley v. Gibson*,

355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *Browning v. Clinton*, 292 F.3d 235, 242,

352 U.S. App. D.C. 4, 352 U.S. App. D.C. 4 (D.C. Cir. 2002). The complaint "is construed

liberally in the plaintiffs' favor, and [the Court should] grant plaintiff the benefit of all inferences

that can be derived from the facts alleged." *Kowal v. MCI Commc'n Corp.*, 16 F.3d at 1276; *see*

*also Browning v. Clinton*, 292 F.3d at 242; *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111,

1113, 342 U.S. App. D.C. 268  (D.C. Cir. 2000); *Harris v. Ladner*, 127 F.3d 1121, 1123, 326

U.S. App. D.C. 446  (D.C. Cir.1997).

Defendant appears to suggest in its motion that the decision of the EEOC Administrative Judge, adopted by defendant as its final decision, has some relevance.  It does not, for the Court, in an action following an adverse decision at the agency level, considers the case *de novo*.  *Scott v. Johanns*, 409 F.3d 466, 469, 366 U.S. App. D.C. 196 (D.C. Cir. 2005) ("in a Title VII suit brought after a final administrative disposition finding no discrimination, the district court considers the discrimination claim *de novo*").

### B.    Plaintiff has exhausted her administrative remedies

Ms. Morris' allegations of her exhaustion of administrative remedies are sufficiently detailed to comply with Fed.R.Civ.P. 8.  She has alleged that "she applied to receive a reasonable accommodation of her disability on April 29, 2005," that "EPA on or about July 7, 2005, determined that she had a disability requiring a reasonable accommodation," that EPA "assigned Ms. Morris to an EPA work site designated the "clean space," in Crystal City, Virginia, on or about July 13, 2005, not consistent with the reasonable accommodation she sought," and that she "initiated the EEO informal and formal complaint process in a timely manner within 45 days thereafter, alleging that she was entitled to a reasonable accommodation that included the ability to work from home."  (First Am. Cplt. ¶ 6.)  She alleged, further, that she "submitted to and cooperated fully with the Equal Employment Opportunity counseling procedure; filed a formal complaint with the agency EEO office on or about August 10, 2005; and . . . on or about December 19, 2006, received an adverse decision from the agency," within the 90 days preceding the filing of this action.  (First Am. Cplt. ¶ 7.)  She has alleged her most recent administrative proceeding, and that EPA dismissed the same as being subsumed within this action, and without providing notice of her right to file a federal action.  (First Am. Cplt. ¶ 8.)  Finally, she has alleged that "all other actions and omissions by EPA, from on or about August 10, 2005 to the present time, were within the scope of and related to the EEOC investigation of

Ms. Morris' administrative complaint, and/or constitute retaliation, for which there is no separate requirement of exhaustion of administrative remedies."  (First Am. Cplt. ¶ 8.)

The fact that the original complaint was filed after Ms. Morris was terminated, and sought relief from termination, is fatal to EPA's procedural attack on the first amended complaint.  When Ms. Morris exhausted her administrative remedies with respect to her termination (First Am. Cplt. ¶ 8), any procedural defect was cured.  As a procedural matter, the amended complaint did not seek any new relief, or relief on different grounds, but added details of Ms. Morris' termination and alleged the final exhaustion of administrative remedies.  Because Ms. Morris had already commenced a federal action, it was not necessary for her to do so again, either within 30 days of EPA's dismissal of her April, 2007 administrative charge or at any other time.

More important, there was no requirement that Ms. Morris amend her complaint. It is generally accepted that exhausting administrative remedies during the pendency of a federal court action cures any defect in that respect, at least where the defendant cannot demonstrate prejudice.[1]  There can be no prejudice in this case because EPA was made aware of the federal action, and received a timely charge of discrimination from Ms. Morris, and deliberately elected not to process her charge because of the pending federal action.

In *Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 17 (D.D.C. 2003), this Court held that:

> "The fact that plaintiff Quarles filed her initial complaint on June 28, 2002, prior to the receipt of her notice of dismissal, does not bar her action at this time. As plaintiffs correctly note, "receipt of a right-to-sue notice during the pendency of the Title VII action cures the defect caused by the failure to receive a right-to-sue notice before filing a Title VII claim in federal court." *Williams v. Washington Metro. Area Transit Auth.*, 232 U.S. App. D.C. 251, 721 F.2d 1412, 1418 n. 12 (D. C. Cir. 1983) (citations omitted). *See also Perry v. Beggs*, 581 F. Supp. 815, 816 (D. D.C. 1983) (holding that "receipt of a

---

[1]  "Prejudice," in the context of litigation, must be something more than the possibility of plaintiff stating a claim for relief and being allowed to proceed with her action.

right-to-sue notice by [the plaintiff] cured her failure to initially satisfy the condition precedent of awaiting the receipt of that letter and therefore this Court has jurisdiction to hear her claim.").

It has long been accepted in this circuit that in the context of private employment, "receipt of a right-to-sue notice during the pendency of the Title VII action cures the defect caused by the failure to receive a right-to-sue notice before filing a Title VII claim in federal court." *Williams v. Washington Metro. Area Transit Auth.*, 721 F.2d 1412, 1418 n.12, 232 U.S. App. D.C. 251 (D.C. Cir. 1983).

This principle, with minor variations, has long been the rule in a majority of federal judicial circuits. *See Henderson v. Eastern Freight Ways, Inc.*, 460 F.2d 258, 260 (4th Cir. 1972) (*per curiam*), *cert. denied*, 410 U.S. 912, 35 L. Ed. 2d 275, 93 S. Ct. 976 (1973); *Clanton v. Orleans Parish School Bd.*, 649 F.2d 1084, 1095 n.13 (5th Cir. 1981); *Portis v. Ohio*, 141 F.3d 632, 635 (6th Cir. 1998); *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1218 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105, 74 L. Ed. 2d 954, 103 S. Ct. 729 (1983); *Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991); *Jones v. American State Bank*, 857 F.2d 494, 499 (8th Cir. 1988) ("the failure to obtain a right-to-sue letter prior to the commencement of a suit is a curable defect"); *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 n.1 (9th Cir. 1990) ("A Title VII complainant may file an action prior to receiving [a] right to sue letter, provided there is not evidence showing that the premature filing precluded the [EEOC] from performing its administrative duties or that the defendant was prejudiced by such filing," and right-to-sue letter cured premature filing); *Martin v. Central States Emblems, Inc.*, 150 Fed. Appx. 852, 855, n.3 (10th Cir. 2005), following *Jones v. Am. State Bank*, 857 F.2d 494, 499 (8th Cir. 1988); *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1525 (11th Cir. 1983).

In the context of federal employment, no right-to-sue letter is required. Exhaustion of administrative remedies occurs upon the issuance of a disposition by the agency or EEOC, or the

expiration of the time period for processing the complaint. Thus, were EPA's determination to be viewed as effectively disposing of Ms. Morris' administrative case, any failure to exhaust administrative remedies was cured at that time, as though Plaintiff had received a right-to-sue letter. Alternatively, because the EPA could not dismiss Ms. Morris' administrative complaint when it did, pursuant to 29 C.F.R. §1614.107(c), its dismissal is a nullity, and the amendment of the complaint should be deemed timely at least until 180 days have elapsed from April 13, 2007, the date she commenced her administrative proceeding.

EPA asserts that Ms. Morris' most recent administrative complaint presented a "mixed case." Ms. Morris' administrative complaint did not challenge her removal under the Civil Service Reform Act of 1978, in a way that would implicate the jurisdiction of the Merit System Protection Board. As the Federal Circuit explained in *Toyama v. MSPB*, 481 F.3d 1361, 1364 (Fed. Cir. 2007), "mixed cases present claims of discrimination based on race, color, religion, sex, national origin, age, or handicap, *together with issues reviewable* by the MSPB. 5 U.S.C. §7702; 29 C.F.R. §1614.302(a). Such cases presented under EEOC procedures become mixed case complaints, governed by EEOC regulations. 29 C.F.R. §1614.302(a)."

Ms. Morris filed her federal action promptly within the time allowed following termination of her earlier administrative case, and promptly submitted a new administrative charge after her termination, thereby exhausting her administrative remedies. If amendment of the original complaint to allege exhaustion of administrative remedies were deemed necessary, the amendment was not untimely, because EPA failed to notify Ms. Morris of all of her remedies when it dismissed her EEO complaint. EPA, itself having failed to comply with the regulatory scheme, makes the remarkable contention that Ms. Morris' action should be dismissed because Ms. Morris did not *commence an action* by June 7, 2007, when she already had a federal action pending which EPA acknowledged when it dismissed her March, 2007 administrative charge.

29 C.F.R. §1614.302(c)(1) provides that "an agency may dismiss a mixed case complaint for the reasons contained in, and under the conditions prescribed in, §1614.107."

Section 1614.107 provides, in pertinent part:

The agency shall dismiss a complaint or a portion of a complaint:

(a) That fails to state a claim under 1614.103 or 1614.106(a) or states the same claim that is pending before or has been decided by the agency or Commission;

(b) That fails to comply with the applicable time limits contained in 1614.105, 1614.106 and 1614.204(c), unless the agency extends the  time limits in accordance with 1614.604(c), or that raises a matter that has not been brought to the attention of a Counselor and is not like or related to a matter that has been brought to the attention of a Counselor;

(c) That is the basis of a pending civil action in a United States District Court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint, or that was the basis of a civil action decided by a United  States District Court in which the complainant was a party. . .

Whenever an agency issues a final decision under the regulations (Subpart A, 29 C.F.R. §1614.110), it must provide its employee with notice of her appeal rights and of the right to file an action in federal court, and of the time limits and other procedures therefore.[2]  Ostensibly, the lack of notice concerning the filing of a civil action was deliberate because EPA regarded the substance of the complaint to be subsumed within the action already pending (First Am. Cplt., ¶ 8).

In *Wilson v. Pena*, 79 F.3d 154, 164 (D.C. Cir. 1996), the Court of Appeals held that agencies must give discrimination complainants notice of their right to initiate a federal action, citing *Coles v. Penny*, 174 U.S. App. D.C. 277, 531 F.2d 609 (D.C. Cir. 1976).  The Court held that the EEOC's failure to apprise a plaintiff of the correct limitations period means that the

---

[2]  Ms. Morris' administrative proceeding may also have been governed by the procedures in 29 C.F.R. §1614.302(d), which provides, in relevant part, "(3) At the time that the agency issues its final decision on a mixed case complaint, the agency shall advise the complainant . . . of the right to file a civil action. provided at 1614.310(a).

period never began to run, reasoning, "Obviously, to be effective, the notice of Title VII rights must be accurate."

In *Williams v. Hidalgo*, 663 F.2d 183, 214 U.S. App. D.C. 6 (D.C. Cir. 1980), the court was confronted with a notice of final action by a federal agency that "never included any statement as to appellant's right to proceed in court within thirty days."  Despite the fact that the plaintiff had been engaged in the EEO administrative process, and was represented by counsel, the Court held that omission of any information about the right to commence a federal action from the notice of final decision permitted the plaintiff to file her action within a reasonable time:

> We conclude from the structure of section 2000e-16(c) that an aggrieved employee can bring an action in court after the department or agency has finally acted on his or her complaint, subject to the department or agency's power to cut that right off after thirty days by issuing proper notice. When an agency or department has taken final action but has failed to issue a proper notice, we determine that an employee can bring an action in district court within a reasonable time.

663 F.2d at 185.

The notice required under the statute was notice including both the right to sue and the time limit. *Id*. at 187.

With respect to the involvement of counsel for the complaint, the Court in Wilson could not have been more emphatic: "it would be perverse to deprive Wilson of the benefit of the new limitations period simply because he is represented by counsel, whose assistance he sought in an effort to protect his rights under Title VII."

Further, under subpart (c) of §1614.107, Ms. Morris' April, 2007, EEO complaint was not ripe for dismissal under this section, having been pending for only 25 days.  Thus, EPA made what appears to be a second, massive procedural error in processing Ms. Morris' administrative charge, yet would have the Court dismiss her complaint because she did not file her amendment within 30 days of the dismissal of that charge.

9

Even if the April, 2007 administrative charged were a "mixed case," the result for which EPA contends in its motion is diametrically opposed to the policy embodied in the Civil Service Reform Act of 1978.  As the Court explained in *Butler v. West*, 164 F.3d 634, 641 (D.C. Cir. 1999), "The Joint Explanatory Statement of the Committee on Conference accompanying the CSRA ("Explanatory Statement") declares that the bill establishes mandatory time limits to govern the maximum length of time the employing agency, the MSPB, the EEOC, or the Panel may take to resolve the matter . . .  in order to assure the employee the right to have as expeditious a resolution of the matter as possible."  Citing H. CONF. REP. NO. 95-1717, Joint Explanatory Statement of the Committee on Conference, 95th Cong., 2d Sess., reprinted in 1978 U.S.C.C.A.N. 2860, 2874.  The regulatory scheme established was not intended or designed to benefit employers, even federal agencies, who advance novel arguments to escape liability for their violations of federal law.

In sum, EPA's challenge to the first amended complaint based on the timing of Ms. Morris' exhaustion of remedies or filing of an amended complaint must fail.  To hold otherwise would elevate form over substance, and essentially grant EPA a windfall.  EPA and Plaintiff had completed one administrative proceeding which is in part the basis for this action, which spanned approximately eighteen months.  Shortly after that proceeding concluded, EPA determined to fire Plaintiff (discovery will show whether the decision was in fact made earlier).  Plaintiff filed this action within the time period for commencing an action after receipt of a final decision in that administrative proceeding.  EPA had notice that Plaintiff claimed the decision to terminate her was in violation of the Rehabilitation Act; received her timely charge of discrimination; and determined explicitly that the charge was subsumed by her lawsuit.  As further evidence that EPA regarded the termination to be a part of this action, it gave Plaintiff no notice of her right to file a federal action, or of the deadlines for doing so.  EPA can identify no

authority, nor principle of law or equity, that would justify escaping liability because of the timing of the filing of this action, or the course of Ms. Morris' April, 2007, administrative complaint.

EPA suggests that many facts alleged in the complaint required plaintiff to take some additional action to exhaust administrative remedies. As plaintiff has alleged, defendant failed to engage in the interactive process to accommodate her disability, failed to accommodate her, and ultimately discharged her. An employee who is not being accommodated is not required to seek EEO counseling each day that she is not accommodated, or each time she receives a piece of evidence of her employer's violation, motive, or other relevant fact. On the contrary, Ms. Morris' administrative charge was pending from August 10, 2005 through December 19, 2006.

It is elementary that the facts alleged in a complaint in this Court, or in the prior administrative complaints, need not be alleged in evidentiary detail. The fact that plaintiff has included such detail in her complaint in no way suggests a failure to exhaust administrative remedies. More importantly, the law is clear that an administrative charge is deemed to include any matter that could be investigated during pendency of the charge that is reasonably related to it. It is well established that a Title VII lawsuit may include "any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *See, e.g., Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992); *Hill v. Western Electric Co.*, 672 F.2d 381, 390 n.6 (4th Cir.), *cert. denied*, 459 U.S. 981 (1982); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970); *EEOC v. General Electric Co.*, 532 F.2d 359, 373 (4th Cir. 1976); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989). A discrimination action may be based on "the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995), citing *Chisholm v. United States Postal Service*, 665 F.2d 482,

491 (4th Cir. 1981). The administrative charge requirement should not be construed to place a heavy technical burden on "individuals untrained in negotiating procedural labyrinths." *Park, supra*, citing *Loe v. Heckler*, 768 F.2d 409, 417, 247 U.S. App. D.C. 292 (D.C. Cir. 1985). For these reasons, EPA's assertion that Ms. Morris never exhausted her administrative remedies with respect to EPA's ongoing failure to engage in the interactive process (an *omission* rather than a discrete adverse action) is nonsense.

The decisions in *Butler v. West*, 164 F.3d 634 (D.C. Cir. 1999) and *King v. Dole*, 782 F.2d 274 (D.C. Cir. 1986), cited by EPA, are inapposite. They involved application of 5 U.S.C. §§7702 and 7703, which govern appeals or actions following decisions of the Merit Systems Protection Board, not an agency such as EPA.

Even if the amendment of Ms. Morris' complaint had been mandatory, and even if EPA had adhered to the procedures for processing Ms. Morris' administrative charge, there is nothing about the amendment of the complaint that was triggered by the dismissal of the administrative charge. The equal employment opportunity regulations are silent on the question whether, and within what time periods, an already pending federal complaint must be amended. The regulations govern only the filing of civil actions. Since shortly after her firing, this action has been pending, apprising EPA of the essential bases on which Ms. Morris seeks relief.

Moreover, it is not necessary to exhaust administrative remedies with respect to retaliation. *Hayes v. Shalala*, 902 F. Supp. 259, 266 (D.D.C. 1995) (a plaintiff may raise a retaliation claim, although not a claim of discrimination, for the first time in federal court and need not exhaust his or her administrative claims). As the Fourth Circuit held in *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992), all circuits that have considered the matter agree that plaintiff need not exhaust administrative remedies for a retaliation claim. *Nealon,* 958 F.2d at 590, cited with approval in *Baker v. Library of Congress*, 260 F. Supp. 2d 59, 66 n.4 (D.D.C.

2003), *Hayes v. Shalala*, 902 F. Supp. 259, 266 (D.D.C. 1995); *see also Brown v. Hartshorne Public School District No. 1*, 864 F.2d 680, 682 (10th Cir. 1988); *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir. 1980); *Wentz v. Maryland Casualty Co.*, 869 F.2d 1153, 1154-55 (8th Cir. 1989); *Gottlieb v. Tulane Univ. of Louisiana*, 809 F.2d 278, 284 (5th Cir. 1987).

*AMTRAK v. Morgan*, 536 U.S. 101, 115, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (U.S. 2002), and its progeny, are not to the contrary. *AMTRAK* dealt only with the "continuing violation" or "pattern of discrimination" doctrine, a means for reviving late-filed claims, and not retaliation after the filing of an administrative charge. Reasoning that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," the Supreme Court held that a claim based on discrete acts which occurred long before the filing of the first administrative charge could be barred. The concept of discrete acts— those "easy to identify"—is related not to subsequent retaliation, but to the "continuing violation" doctrine, under which courts have observed that a discrimination plaintiff who is subjected to regular, recurring, discrimination not involving discrete discriminatory acts *might not realize* at first that she is the victim of unlawful discrimination. In *Coleman Adebayo v. Leavitt*, 326 F. Supp. 2d 132 (D.D.C. 2004), this Court distinguished *AMTRAK*, recognizing that a claimant is not required to file successive administrative charges when the basis for the alleged discrimination is the subject of a pending administrative action, observing that "to require the employee to exhaust administrative remedies as to each weekly denial of time off would seem to put an excessive burden on plaintiffs." 326 F. Supp. 2d 132, 139 n.3 (emphasis added). "Instead," the court continued, "the employee can file a charge when the initial, final decision is made, or after the other, later acts, so long as those acts are independently discriminatory." *Id.*[3]

---

[3]   *Coleman-Adebayo v. Leavitt* applies the *AMTRAK* holding to acts of discrimination occurring long after the filing of "earlier, *exhausted* complaints." *See also, Messer v. Meno*, 130 F.3d 130,

Ms. Morris was not required to file successive administrative charges relating to her quest for a reasonable accommodation while her August, 2005 administrative case was pending.

Retaliation claims have universally been held properly to be raised for the first time in federal court, not because of any theory of pattern of discrimination or continuing violation, and not because it is difficult to identify retaliatory acts, but because a discrimination claimant should not be required to make a separate administrative charge where the retaliation grew out of her earlier timely administrative charge, or where requiring her to pursue additional administrative remedies would serve only to delay a remedy or result in piecemeal litigation of her claims, or where she might be dissuaded from further complaints because of the very retaliation of which she complains.  *See, e.g.  Clockedile v. New Hampshire Dep't of Corr.*, 245 F.3d 1 (1st Cir. 2001); *Gottlieb v. Tulane Univ.*, 809 F.2d 278, 284 (5th Cir. 1987); *Gupta v. East Texas State Univ.*, 654 F.2d 411 (5th Cir. 1981); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989).

### C.    Plaintiff has stated a claim for failure to accommodate under the Rehabilitation Act

The right of a federal employee to seek relief in federal court under the Rehabilitation Act is well established.  *Breen v. DOT*, 282 F.3d 839, 841, 350 U.S. App. D.C. 212 (D.C. Cir. 2002); *Langon v. HHS*, 959 F.2d 1053, 295 U.S. App. D.C. 49 (D.C. Cir. 1992) ("wholly apart from whether an agency's plan satisfied section 501, the courts have recognized private actions challenging individual employment decisions").  The phrase "reasonable accommodation" does

---

135 (5th Cir. 1997) ("The core idea [of the continuing violations theory] is that equitable considerations may very well require that the filing periods *not begin to run* until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. . . .  Thus, a plaintiff can avoid a limitations bar for an event that fails to fall within the statutory period where there is '[a] persisting and continuing system of discriminatory practices . . .' ").  The suggestion that *AMTRAK* also requires new administrative complaints based on continued refusals to accommodate, while an administrative complaint is pending (and thus *not* "exhausted"), is misguided.

not appear in section 501 of the Rehabilitation Act, but is derived from an EEOC regulation, 29

C.F.R. § 1613.704(a), which provides that "an agency shall make reasonable accommodation to

the known physical or mental limitations of a qualified handicapped applicant or employee

unless the agency can demonstrate that the accommodation would impose an undue hardship on

the operation of its program." *Id.*; *see also, Carter v. Bennett*, 268 App. D.C. 183, 840 F.2d 63

(D.C. Cir. 1988); *Redd v. Rubin*, 34 F. Supp. 2d 1, 5 (D.D.C. 1998).  The first amended

complaint resolved any issue surrounding the identification of the Rehabilitation Act under

which this action arises.

　　　　Claims for discrimination under the Rehabilitation Act follow the statutory formulation

of the ADA, which prohibits discrimination against a "qualified individual with a disability ... in

regard to ... terms, conditions, and privileges of employment."  42 U.S.C. §12112(a).  A

"qualified individual with a disability" is one who has a disability, and "with or without

reasonable accommodation, can perform the essential functions of the employment position that

such individual holds or desires."  *Id.* §12111(8); see 29 C.F.R. §1614.203(a)(6) (EEOC

Rehabilitation Act regulation).  Thus, an individual with a disability is "qualified" if she can

perform the essential functions of the position with a reasonable accommodation.  *Carr v. Reno*,

23 F.3d 525, 529, 306 U.S. App. D.C. 217 (D.C. Cir. 1994).  Pursuant to the ADA, a "reasonable

accommodation" can include "job restructuring [and] part-time or modified work schedules."  42

U.S.C. §12111(9); 29 C.F.R. §1614.203(c)(2); *Woodruff v. Peters*, 482 F.3d 521, 527 (D.C. Cir.

2007).

　　　　In *Woodruff v. Peters*, the Court of Appeals for the District of Columbia Circuit held that

a plaintiff who, in a second amended complaint "implicitly averred that he was a qualified

individual with a disability" had satisfied the pleading requirement of the Rehabilitation Act,

characterizing the government's motion to dismiss on that issue as "ill-founded."  482 F.3d at

526.  The Court held that the mere allegations that the plaintiff was a "qualified individual with a disability," and that his employer "failed to grant him the 'reasonable accommodations' his disability necessitated," sufficed to establish a *prima facie* case of discrimination under 42 U.S.C. §12112(b)(5)(A).  *Woodruff*, 482 F.3d at 527.

    "[W]hen the defendant denies its actions were motivated by the plaintiff's disability, the plaintiff may employ the *McDonnell Douglas* burden-shifting framework to bring her Rehabilitation Act claim before a jury."  *McGill v. Munoz*, 203 F.3d 843, 845, 340 U.S. App. D.C. 185 (D.C. Cir. 2000), citing  *Aka v. Washington Hosp. Ctr.*, 332 U.S. App. D.C. 256, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); *Barth v. Gelb*, 303 U.S. App. D.C. 211, 2 F.3d 1180, 1186 (D.C. Cir. 1993);  *Marshall v. Federal Express Corp*., 327 U.S. App. D.C. 302, 130 F.3d 1095, 1099-1100 (D.C. Cir. 1997).  This framework applies equally to claims of disability discrimination under the Rehabilitation Act.   *McGill v. Munoz*, 203 F.3d at 845 n.2.  However, unlike the traditional application of the *McDonnell Douglas* mechanism, in a disability case the employer bears the ultimate burden of persuasion on the issue of reasonableness, which "merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship."  *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995).  The only burden that an employee should bear is to show that the suggested accommodation would effectively enable the employee to perform the essential functions of the job.  *See Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 258-59 (1st Cir. 2001).

    As in *Woodruff*, plaintiff here has alleged that the accommodation she sought was available, and was reasonable.  In *Woodruff*, the government employer had a policy allowing employees to telecommute "as frequently as five days a week."  That fact, together with evidence that another employee of the defendant had been allowed to lead a work team from a

16

remote location, and the plaintiff's own testimony that his team was "mostly . . . self-directed,"
led the Court of Appeals to hold that the plaintiff could make out a claim that he should have
been allowed to telecommute, and that summary judgment on the Rehabilitation Act claim thus
had been improperly granted.  In the instant case, plaintiff alleges that a work-at-home
accommodation would be reasonable, supported by extensive factual allegations concerning her
experience working from home (First Am. Cplt. ¶¶ 11, 14, 16, 18, 20), her position description
(First Am. Cplt. ¶¶ 9, 10), defendant's sponsorship of telecommuting from home (First Am.
Cplt. ¶¶ 15).  Plaintiff alleges that the accommodation she sought would not impose a hardship
of any degree upon defendant. (First Am. Cplt. ¶¶ 14, 15, 18.)

By failing to provide Ms. Morris with a reasonable accommodation, the Agency has
discriminated against her as a qualified individual with a disability.  "The ADA defines the term
'discriminate' to include 'not making reasonable accommodations to the known physical or
mental limitations of an otherwise qualified individual with a disability who is an applicant or
employee, unless such covered entity can demonstrate that the accommodation would impose an
undue hardship on the operation of the business of such covered entity.' 42 U.S.C.
§12112(b)(5)(A); see 29 C.F.R. §1614.203(c)(1)."   *Breen v. DOT*, 282 F.3d at 841 n.3.

As demonstrated in the following sections, plaintiff has alleged the necessary elements of
a claim under the Rehabilitation Act: that she is a qualified individual with a disability (First
Am. Cplt. ¶¶ 12, 13 ), employed by an agency of the federal government (First Am. Cplt. ¶ 9),
that reasonable accommodations existed which would not pose an undue hardship for her
employer (First Am. Cplt. ¶¶ 11, 14-16, 18, 20), and that her employer failed not only to
accommodate her (First Am. Cplt. ¶¶ 21-23), but to engage in the interactive process in an
effort to identify a reasonable accommodation at all (First Am. Cplt. ¶¶ 21-56).

**D.  Plaintiff Is an Individual with a Disability**

Plaintiff has alleged that she suffers from a disability for purposes of the Rehabilitation Act.  (First Am. Cplt. ¶12.)  She alleged that she suffered from "a yeast sensitivity which in turn causes her to be sensitive to small concentrations of other molds and even chemicals in the workplace and elsewhere;"  that her "physician reported to EPA that Ms. Morris has sensitivities to mold and dust mites, causing muscle weakness, breathing problems, problems with walking, thinking, elevated blood pressure, and swelling;" that an EPA physician confirmed these details with Ms. Morris' physician; and that her condition was "well known to Ms. Morris' supervisor, John Richards, and others within the Agency."  (First Am. Cplt. ¶12; *id.* ¶24.)  Ms. Morris has alleged in her amendment that her disability limits several major life activities. (First Am. Cplt. ¶12)  In fact, "EPA . . . found on July 7, 2005 that Ms. Morris was an individual with a disability."  (First Am. Cplt. ¶13.)

Courts have recognized as a matter of law that breathing difficulties and chemical sensitivity constitute disabilities.  *See Battle v. Mineta*, 387 F. Supp. 2d 4, 8 (D.D.C. 2005) (the District of Columbia Circuit recognizes that walking and breathing are major life activities); *Tangires v. Johns Hopkins Hosp.*, 79 F. Supp. 2d 587 (D.Md. 2000), *aff'd* 230 F.3d 1354 (4th Cir. 2000).  Plaintiff has alleged that she has a life-threatening condition that defendant expressly recognized as a disability. (First Am. Cplt., && 6, 53.)  Contrary to defendant's argument (Motion, p. 15), plaintiff has indeed alleged that she experiences her disabling condition in the workplace "*and elsewhere*."  (First Am. Cplt. ¶12.)  The simplistic suggestion that plaintiff is not disabled because she does not experience symptoms of her condition in her residence (Motion, at 17), where she has sufficient control over her environment and activities to eliminate the causes of her symptoms, establishes nothing.  (First Am. Cplt. ¶14.)  Having alleged that she is disabled—an allegation supported by detailed facts—and having alleged that the disability

indeed affects her life outside the workplace as well as within, nothing more should be required. Now that Ms. Morris has alleged that her disability impairs several specific categories of life activity (First Am. Cplt. ¶12), EPA asserts that she has not alleged a limitation of a life activity of "central importance to daily life," citing *Battle v. Mineta*, 387 F. Supp. 2d, at 8.  In *Battle*, this Court observed that the Ninth and Second Circuits have found social activities, such as "interacting with others," to be a major life activity.  *Id.*  The opinion in *Battle* goes no further than to hold that "ability to interact positively with others" was too amorphous to qualify as a major life activity. This holding has no bearing on Ms. Morris' allegations of specific activities impaired by her disability, such as travel, visiting in the homes of others, and shopping–all far more concrete than the "positive interaction" under consideration in *Battle*.

Incredibly, however, EPA's argument overlooks plaintiff's allegation that her disability limits her in activities such as breathing, walking and thinking.  (First Am. Cplt. ¶12.)  It can scarcely be questioned that these allegations, including both activities essential to life itself (*e.g.* breathing), and normal activities of daily life (*e.g.* travel, normal social interaction), satisfy the requirements for a qualifying disability under the Rehabilitation Act.  Finally, notwithstanding plaintiff's specific allegations, and EPA's arguments, the complaint and First Amended Complaint both alleged that Ms. Morris' employer itself *recognized* her condition as a qualifying disability.

Defendant's assertion that Plaintiff is "allergic to her workplace" (Motion, at 2) is an absurdity.  Defendant suggests that plaintiff=s disability does not affect aspects of her life other than at work, citing the words "workplace sensitivity" in Exhibit 5 to the motion.  The full statement to which EPA refers in Exhibit 5 is "workplace sensitivity which affects life activity of breathing and walking."  Moreover, Ms. Morris referred to her "workplace" because she was complaining about needing, but not receiving, accommodation for effects she experienced in the

workplace.  It is sufficient for purposes of her claims that she requested a reasonable accommodation (First Am. Cplt. ¶ 6), was found by EPA to be a person with a disability (*id*.), made a timely administrative charge based on disability which reasonably notified her employer of the nature of her complaint (*id*.), and the full nature and scope of her disability and her complaint were investigated by EPA's Office of Civil Rights.

As alleged in paragraph 53 of the first amended complaint, "Ms. Morris . . . obtained a consultation and assessment from Richard Niklas, M.D., a clinical professor in the Allergy Clinic at George Washington Medical Center, on November 21, 2006," who reported the following diagnosis: "(1) perennial allergic rhinitis with seasonal exacerbations; (2) chronic sinusitis; (3) asthma mild, intermittent; (4) sulfite sensitivity; (5) recurrent anaphylaxis; and (6) hypertension," some of which, Dr. Niklas explained to EPA, were "severe life-threatening reactions."  (First Am. Cplt., ¶ 53.)

While Ms. Morris asked to be assigned to work at home, she did not specify that the accommodation be full-time, or permanent.  Defendant, however, never pursued the possibility of allowing plaintiff to work from home on any basis, and/or within other government facilities, such as might have enabled her to perform her job.  (First Am. Cplt. ¶¶ 38-42.)

Over the course of the summer and fall of 2006, Ms. Morris suffered repeated severe reactions in the Potomac Yards space to which she was then assigned, reporting to her supervisor that EPA's Federal Occupational Health (OSHA) clinician advised her to seek immediate medical attention, and that "after I arrive in the workplace building, I am continuing to encounter all the previously mentioned allergic reactions (elevated blood pressure and heart rate, body swelling, congestion, muscle weakness, difficulty breathing, etc.)  I am also encountering chest pain."  (First Am. Cplt., ¶ 25-26.)  In one episode, documented by the OSHA clinician, on July 17, 2006, in the Potomac Yard Building, plaintiff "experienced another reaction, of which she

notified Mr. Richards, including elevating blood pressure, shortness of breath, shallow breathing, body swelling, chest pain, and a near loss of consciousness.  (First Am. Cplt. ¶ 28.)

In contrast, although her assignment to EPA's "clean space" was not adequate as an accommodation, plaintiff has alleged, "wearing a face mask and sometimes goggles, and taking frequent outdoor breaks, Ms. Morris was generally able to work in the 'clean space.' "  (First Am. Cplt., ¶ 21.)  Thus, although not a complete or reasonable accommodation, Ms. Morris' experience demonstrated clearly to defendant that she could perform her job with a reasonable and adequate accommodation.  Defendant's argument that plaintiff is not disabled, but simply "allergic to her workplace," must fail.

### E.   Plaintiff was and is a qualified individual

The inquiry whether plaintiff is a qualified individual has as its focus whether plaintiff, with a reasonable accommodation, can perform the essential functions of her position.

Plaintiff has alleged in considerable detail that she was qualified to perform her job with a reasonable accommodation.  First, she performed her job in the "clean space" with less than a reasonable accommodation.  (First Am. Cplt., ¶ 21.)  She alleged the essential functions of her position, as set forth in the Position Description, and that they require neither physical presence nor face-to-face contact with others, either explicitly or implicitly.  (First Am. Cplt., ¶ 10.)  The Position Description was excerpted at length in the complaint.  The complaint further describes how plaintiff was "allowed to work from home temporarily in 2004 and 2005," with reasonable success (First Am. Cplt., ¶ 11), and that while assigned to work in the "clean space" for a number of months, "she did not have in-person contact on a day-to-day basis with her coworkers or others," nor did she in her subsequent duty station, Potomac Yards.  (*Id.*)

Further, Ms. Morris alleges that "all essential functions of [her] job can be performed remotely," and that working at home, she "had complete access to all necessary persons and

materials." (First Am. Cplt., ¶ 14.) As plaintiff alleges, she "has worked from home on many occasions using EPA's Lotus Notes e-mail system to transmit documents back and forth, and e-mail or telephone to communicate effectively with coworkers," and has had no assignments for at least two years that could not have been worked on in this manner. (First Am. Cplt., ¶ 18.) Plaintiff has alleged that remote access to the defendant's Local Area Network (LAN) is possible, and that "it is generally accepted that employees in the federal government can have such access." (First Am. Cplt., ¶ 20.) During periods when she was working primarily from home, Ms. Morris' supervisor worked closely with her, directing her work, and commending her progress. (First Am. Cplt., ¶ 16.) EPA, and plaintiff's supervisor specifically, have permitted others to work from home (First Am. Cplt., ¶ 15). In sum, plaintiff has alleged that, "if allowed to work at home, [she would be] able to perform the essential functions of her position." (First Am. Cplt., ¶ 14.)

Addressing the issue of hardship, and reasonableness of her work-at-home accommodation, plaintiff has alleged that "EPA has offered to accommodate other disabled employees with permanent work-at-home arrangements, and has permitted employees to work from home, either on a full time or part time basis, and either temporarily or permanently" and that "the first type of 'no cost/low cost accommodation' listed in EPA's Reasonable Accommodation Procedures, is 'Allowing employees to work from home, telecommuting centers or alternate EPA work locations.' " (First Am. Cplt., ¶ 15.)

Defendant cannot establish, either at the pleading stage or, plaintiff contends, at trial, that essential functions of her position prevent her from working with the accommodation she requested or some variant of it. Essential functions are "the fundamental job duties of the employment position." 29 C.F.R. §1630.2(n)(1). *Taylor v. Rice*, 451 F.3d 898, 906, 371 U.S. App. D.C. 383 (D.C. Cir. 2006). The "essential functions" of a job "do[] not include the

marginal functions of the position." *Baker v. Potter*, 294 F. Supp. 2d 33, 43 (D.D.C. 2003); 29 C.F.R. §1630.2(n)(1). EEOC Regulations at 29 CFR §1630.2(n) govern the determination of what constitutes an essential function of a position. *Taylor*, 451 F.3d 898, 906. In addition to the employer's "judgment as to what functions of a job are essential," 42 U.S.C. §12111(8), a court must consider "[t]he work experience of past incumbents in the job," 29 C.F.R. §1630.2(n)(3)(vi), and "[t]he current work experience of incumbents in similar jobs," *id*. §1630.2(n)(3)(vii).

According to these regulations, "the term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." The regulation continues, "the term 'essential functions' does not include the marginal functions of the position." The regulation then provides a non-exclusive list of factors to be considered in determining whether a particular function is essential:

> (i) The function may be essential because the reason the position exists is to perform that function;
>
> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
>
> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

None of these factors would support presence at any EPA controlled worksite as an essential function of Ms. Morris' position. The regulation further specifies the types of evidence which may establish that a function is essential, again a non-exclusive list:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

Given Ms. Morris' experience working both at home and without regular interaction with her work group, these factors weigh heavily against a finding that presence at an EPA controlled worksite is an essential function of Ms. Morris' position, and plainly cannot be dispositive at the pleading stage.

As the Court of Appeals held in *Breen*, evidence that an employer offers some employees accommodations under circumstances similar to the plaintiff's creates a genuine issue of material fact, in the context of a Rule 56 motion, and prevents judgment for the employer. *Breen*, *supra*, 282 F.3d at 842, citing *Walsh v. United Parcel Serv.*, 201 F.3d 718, 726 (6th Cir. 2000); *Swanks v. WMATA*, 179 F.3d 929, 934, 336 U.S. App. D.C. 319 (D.C. Cir. 1999) (an employer may not obtain summary judgment by declaring it has a policy when the employee may have evidence that the employer follows the policy selectively); *see Woodman v. Runyon*, 132 F.3d 1330, 1346 (10th Cir. 1997).

While courts must consider and give deference to "the employer's judgment as to what functions of a job are essential," *id.*, "the court's deference to the employer's judgment regarding a job's essential functions . . does not end the inquiry. *Baker, supra,* 294 F. Supp. 2d, at 44. Further, written position descriptions of the employer "shall be considered evidence of the essential functions of the job. . ." 29 C.F.R. §1630.2(n)(3).' " *Id.*

A brief enumeration of the positions taken by Ms. Morris' supervisor on the subject of essential function, as alleged in the complaint, demonstrates the bad faith with which EPA has withheld accommodation from Ms. Morris. At various times he has claimed, *ipse dixit*, "that it is

necessary for Ms. Morris to be present at an EPA facility to perform her duties" (First Am. Cplt., ¶ 51), that "we really need Connie inside the complex to be most effective in the work she is doing," (First Am. Cplt., ¶ 21), and that "working within the EPA building complex is a requirement of your position," although plaintiff had had two different cubicles in EPA buildings, neither of which had her working in the same building with most of her fellow staff members.  (First Am. Cplt., ¶ 35.)  Ms. Morris' supervisor has said on another occasion that "note taking" in a "common space controlled by the government" was an essential function of her job.  (First Am. Cplt., ¶ 51.)  However, her supervisor has also allowed that he arranged for Ms. Morris to have space at Potomac Yards in a negotiation in which he had to agree to give defendant's Pesticides Program its own Federal Register staff member on site, thus requiring plaintiff to work in an EPA facility in order (with more than minimal circularity) to secure for plaintiff a cubicle in an EPA facility that was "green," but not "clean."  (First Am. Cplt., ¶ 30.)  Thus, the only assignment resembling an accommodation, after the "clean space," was not an accommodation at all, but was exclusively for EPA's convenience.

The essential function of Ms. Morris' position that her supervisor cannot seem to describe is communication, and perhaps interaction with coworkers, a variant of communication.  As with a blind person who, technically speaking, cannot "read," technology provides many ways for Ms. Morris to perform these functions.  Presence at an EPA worksite is merely one such means.  *See Smith v. District of Columbia*, 271 F. Supp. 2d 165, 171 (D.D.C. 2003):

> All would agree that being able to read is an essential function of being a judge, lawyer or law professor. Yet, there are many persons who have ennobled those professions even though they were blind and, therefore, could perform their jobs only by being accommodated by books in braille, computer software, or the hiring of a reader at their employer's expense. Thus, they were disabled but capable of every essential function of their jobs because of an accommodation. Their situation is to be distinguished from an illiterate person who cannot perform these jobs, irrespective of either a physical disability or an accommodation.

"Determining whether a particular function is essential is a factual inquiry." *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 915 (10th Cir. 2004), citing *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1190, 1191 (10th Cir. 2003). It is thus an inquiry ill-suited to disposition on a motion under Fed.R.Civ.P. 12(b)(6). While the trier of fact must "give consideration to the employer's judgment regarding the functions of a job that are essential," "an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." *Id.* Some of the factors that courts evaluate in determining whether a job function is "essential" include the amount of time that is required to perform the function; the consequences of not requiring that such function be performed; and whether current and former employees holding the same position performed the function. See *Baker v. Potter*, 294 F. Supp. 2d 33, 43 (D.D.C. 2003); 29 C.F.R. §1630.2(n)(3). *Clayborne v. Potter*, 448 F. Supp. 2d 185 (D.D.C. 2006). Even those courts that have held that an employer's judgment regarding what functions are essential is entitled to some deference must conclude, ultimately, that "the question whether a task constitutes an essential function depends on the totality of the circumstances." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113 (2d Cir. 2004) (district court erred in finding a physician's night and weekend duty constituted essential functions even though those shifts required coverage and all members of group were expected to assist).

Defendant continues to quote selectively, and misleadingly, from *Carr v. Reno, supra*, 23 F.3d 525,[4] in which the Court of Appeals recognized that work-at-home arrangements may be appropriate for federal employees: "an essential function of any government job is an ability to appear for work (whether in the workplace *or*, in the unusual case, *at home*)." 23 F.3d at 530 (emphasis added). Of course, 13 years after *Carr*, when EPA's list of no-cost or low-cost

---

[4] Plaintiff brought the incomplete and misleading quote to EPA's attention in opposing the first motion to dismiss.

accommodations is headed by "allowing employees to work from home, telecommuting centers or alternate EPA work locations," (First Am. Cplt. ¶15), could EPA be representing to this Court that *Carr* stands for a general government-wide prohibition on working from home?

### F.   Defendant never accommodated Ms. Morris

Defendant has never provided a reasonable accommodation to plaintiff.  As plaintiff has alleged, in her one and only accommodation, the "clean space" cubicle, she had to wear a breathing mask and goggles, and take frequent outdoor breaks, in order to work without endangering her health.  (First Am. Cplt., ¶ 21.)  It is undisputed that defendant then withdrew this accommodation, and moved plaintiff to a so-called "green building."  (First Am. Cplt., ¶ 23.)  Plaintiff's allegations in paragraphs 38-42 plainly establish that defendant had withdrawn from the interactive process and offered her no further accommodation after removing her from the "clean space."  (First Am. Cplt. ¶23.)  Just over a month after her only accommodation had been withdrawn, plaintiff's supervisor told her "Since there will be no resolution of your request for 'reconsideration' for some months I think it is reasonable for you to explain your plan for returning to work prior to the impending exhaustion of your earned leave balance."  (First Am. Cplt. ¶38.)  Nothing further was done to accommodate plaintiff.  (First Am. Cplt. ¶¶38-42.)

### G.   Defendant failed to engage in the interactive process

The EEOC Enforcement Guidance notes that "an employer must consider each request for reasonable accommodation," and that "if a reasonable accommodation turns out to be ineffective and the employee with a disability remains unable to perform an essential function, the employer must consider whether there would be an alternative reasonable accommodation that would not pose an undue hardship."  (Citing EEOC Enforcement Guidance on Reasonable Accommodation, at 7625, *see* http://www.eeoc.gov/ policy/docs/accommodation.html.)  "Thus, the employer's obligation to engage in the interactive process extends beyond the first attempt at

accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed. This rule fosters the framework of cooperative problem-solving contemplated by the ADA, by encouraging employers to seek to find accommodations that really work, and by avoiding the creation of a perverse incentive for employees to request the most drastic and burdensome accommodation possible out of fear that a lesser accommodation might be ineffective." *Humphrey v. Memorial Hosps. Ass'n,* 239 F.3d 1128, 1138 (9th Cir. 2001).

In *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 1999), the Court of Appeals held:

> "Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability"
> . . . .
> "We have previously recognized both this regulation and the EEOC's interpretive guideline and applied them to a claim brought under the Rehabilitation Act"

184 F.3d, at 311 (citing the EEOC's interpretive guideline, 29 C.F.R. Pt. 1630, App. §1630.9 at 359).

The interactive process is mandatory. *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999). Failure of an employer to engage in the interactive process subjects the employer to liability for violation of the ADA, and per force, the Rehabilitation Act. *See Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 700, 8 AD Cas. (BNA) 875, 887 (7th Cir. 1998).

Defendant had a duty to engage in an interactive process with Ms. Morris, in good faith. *Pantazes v. Jackson*, 366 F. Supp. 2d 57, 70 (D.D.C. 2005) ("absence of good faith, including unreasonable delays caused by an employer, can serve as evidence of an ADA violation"); *see also Battle v. UPS*, 438 F.3d 856, 862-863 (8th Cir. 2006) (an employer hinders this process when the employer knows about the employee's disability, the employee requests

28

accommodations or assistance, the employer does not in good faith assist the employee in seeking accommodations, and the employee could have been reasonably accommodated but for the employer's lack of good faith); *accord Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1045 (8th Cir. 2005); *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002); *Humphrey v. Memorial Hosps. Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001); *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) ("A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith."); *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 677 (1st Cir. 1995). Although the interactive process "is not an end in itself," "the absence of good faith, including unreasonable delays caused by an employer, can serve as evidence of an ADA violation." *Id.*, citing *Picinich v. United Parcel Serv.*, 321 F. Supp. 2d 485, 514 (N.D.N.Y. 2004). Moreover, courts have held that the duty to accommodate "is a 'continuing' duty that is 'not exhausted by one effort.' " *McAlindin*, 192 F.3d at 1237. Employers who fail to engage in the interactive process in good faith face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible. *Barnett*, 228 F.3d at 1116.

The interactive process requires communication and good faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process. *Humphrey v. Memorial Hosps. Ass'n*, 239 F.3d 1128, 1114-15 (9th Cir. 2001); *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) ("A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith."). "A party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). "An employee's request for reasonable accommodation requires a great deal of communication between the

employee and employer... Both parties bear responsibility for determining what accommodation is necessary... 'Neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.'" *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281 (7th Cir. 1996), citing *Beck*, 75 F.3d at 1135-37; cited with approval in *Taylor*, 184 F.3d at 312.

Defendant has failed to engage in the interactive process in good faith, because it has not reviewed or disclosed to plaintiff options for full-time or part-time work from home, has not identified any other potential work sites in which breathing conditions could be improved and/or modified, has not explained how working from a remote site under EPA control is different from working from home, or that less-than-perfect efficiency in Ms. Morris' performance of her duties from a remote location imposes a hardship on defendant (given that employees with other types of disabilities may be entitled to readers, special communications software, etc.) (*See* Complaint, ¶42.) Defendant's only "interaction" with plaintiff has been to dog her unceasingly for more and more medical information, expecting her to develop and provide it at her own expense. (First Am. Cplt., ¶¶39-41.) Defendant has never suggested the nature or quality of medical information it would be willing to accept in order to come back to the table and discuss accommodation alternatives in an interactive process, nor has it ever acknowledged that working in an office environment with a high level of traffic, of people, files, equipment, could itself be the cause of Ms. Morris' reactions, the condition requiring modification in order to accommodate

Ms. Morris' disability.  Defendant has taken the position, in short, that unless plaintiff can demonstrate scientifically that conditions inherent in defendant's buildings themselves cause her reactions, plaintiff is not entitled to accommodation.  Finally, plaintiff's supervisor has admitted that his requests for information were not related to the interactive process.  *See* First Amended Complaint, ¶40-41 (requests for medical documentation "in no way related to "Reasonable Accommodation").

     Nor does Ms. Morris' desire for a work-at-home accommodation, whether reasonable or not, relieve EPA of its duty.  An employer who has received proper notice cannot escape its duty to engage in the interactive process "simply because the employee did not come forward with a reasonable accommodation that would prevail in litigation." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317.  The court in *Taylor* continued, citing EEOC regulations: "it would make little sense to insist that the employee must have arrived at the end product of the interactive process before the employer has a duty to participate in that process. The EEOC's interpretive guidelines squarely place some of the burden on the employer by stating that "the employer must make a reasonable effort to determine the appropriate accommodation." 29 C.F.R. Pt. 1630, App. §1630.9 at 359.  *Taylor*, 184 F.3d at 311.  Of course, it has long been the law of this circuit that an employer must consider a work-at-home arrangement as a possible accommodation under the Rehabilitation Act. *Langon v. Department of Health and Human Servs.*, 295 U.S. App. D.C. 49, 959 F.2d 1053, 1060-61 (D.C. Cir. 1992).  Other circuits are in accord, e.g. *Humphrey v. Memorial Hosps. Ass'n*, *supra*, 239 F.3d at 1136-37 (holding that "physical attendance" was "not an essential job duty" for a medical transcriptionist, despite the need for short turn-around times, punctuality and diligent completion of assignments).

     The insistence of plaintiff's supervisor that she document "issues" specific to her work environment was a further refusal to give fair consideration to the nature of Ms. Morris'

31

disability.  For example, the need for an enclosed office space with air filtration to protect from

incidental irritants that might enter the office space periodically from sources such as people,

files, or equipment, would relate to "general health issues," and would not be "specific" to a

given building or office.  *Cf. Service v. Union Pac. R.R. Co*., 153 F. Supp. 2d 1187, 1193 (E.D.

Cal. 2001) (summary judgment denied to employer on issue of reasonable accommodation

involving preventing on-the-job exposure to cigarette smoke).  Nonetheless, such an

accommodation would be effective, and would be reasonable under the circumstances in this

case.

EPA, however, appears to have ruled out the possibility that Ms. Morris' condition could

be aggravated by prolonged exposure to small concentrations of irritants.  Rather than review

with Ms. Morris the basis for its position, EPA has arbitrarily rejected the opinions and

recommendations of Ms. Morris' physician, without determining or discussing alternative

medical opinions or viewpoints.  It is unreasonable for EPA to insist that Ms. Morris deliver a

medical opinion addressing the specific features of a series of EPA worksites (and at her own

expense) when her condition plainly requires that she not be required to work regularly in a

large, open office area, exposed to a variety of potential respiratory irritants, and especially in

light of Ms. Morris' repeated severe reactions which EPA personnel observed firsthand.  Also,

the assertion that plaintiff's diagnoses were flawed because based in part on patient reporting, a

recognized basis for medical diagnosis and treatment, is similarly irrational. *See, e.g., Bunnell v.

Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc) (In a case of chronic pain, a claimant

need not produce medical evidence supporting the severity of the pain, only its likely existence).

In sum, Ms. Morris has alleged that EPA delayed the reasonable accommodation process

(First Am. Cplt., ¶ 21), quickly withdrew the only accommodation it ever granted her (First Am.

Cplt., ¶ 23), assigned her to space that was virtually calculated to punish and degrade her (First

Am. Cplt., ¶ 23), and moved her from location to location, including back to the very site that had caused her the most severe health problems (First Am. Cplt. ¶ 52), all the while dissecting every word and phrase written by her physicians in order to marginalize, rather than understand, their opinions. (*E.g.,* asserting that her physician was speaking "hypothetically" because he wrote that Ms. Morris "*would* be able to perform the essential functions of her job from home," First Am. Cplt., ¶ 51.m.)

As Ms. Morris struggled to work, continually becoming ill because of her workplace environment, her supervisor steadfastly refused to allow her to catch up on her work from home, even temporarily, and continued to harass her. (First Am. Cplt., ¶ 37.)  In fact, at no time did EPA ever propose to Ms. Morris that she be permitted to work from home temporarily, part-time, or on any other basis (First Am. Cplt., ¶ 42), although periodic changes in schedule can be a reasonable accommodation in an appropriate case.  Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act, 29 C.F.R. Pt. 1630, App. ("other accommodations could include . . . providing additional unpaid leave for necessary treatment"); *see Fogleman v. Greater Hazleton Health Alliance,* 122 Fed. Appx. 581, 585 (3d Cir. 2004).

Mr. Richards began counting Ms. Morris AWOL when she was too ill to report to work, September 8-15, 2006. (First Am. Cplt., ¶ 46.)  When Ms. Morris provided a detailed opinion letter from her physician, Dr. Shamim, and documentation from her hospitalization, in the second week of October; on October 16, 2006, Mr. Richards wrote, without further elaboration, "the medical documentation that you submitted in response to the August 24, 2006 letter failed to address several of the questions raised in that letter.  Based on the insufficient response and inconsistencies with earlier statements made by your doctor you have failed to satisfy the requirements of the August 24, 2006 letter.  Therefore, absences will continue to be charged as Absence Without Leave (AWOL) until the information requested on August 24th is furnished."

33

(First Am. Cplt., ¶ 47.)  Ms. Morris responded in detail, on October 16, 2006, explaining how Dr. Shamim's letter addressed each of the questions Mr. Richards had asked (First Am. Cplt., ¶48), but Mr. Richards responded with one word: "insufficient." (First Am. Cplt., ¶ 49.)

For the purpose of identifying a reasonable accommodation, Ms. Morris' documentation was more than adequate.  (First Am. Cplt., ¶ 50.)  According to the EPA's own National Reasonable Accommodations Procedures, medical documentation is not required at all if the disabling condition is obvious (as in this case), and even when required, it need only "substantiate that the applicant or employee has a qualifying disability, what the functional limitation is, and/or why a Reasonable Accommodation is needed," and, in appropriate circumstances, medical documentation from a "social worker" or "counselor" will be accepted. (*Id.*)  Rather than work on an accommodation of Ms. Morris' disability, Mr. Richards deflected the opinions of Ms. Morris' physician, alluding to "inconsistencies with earlier statements made by your doctor."  (*Id.*)

In sum, apart from assigning Ms. Morris to the "clean space," an inadequate accommodation at best and the subject of plaintiff's first charge of discrimination, EPA has concentrated its efforts toward creating stumbling blocks for plaintiff, withholding accommodation and preventing her from performing her duties.  It has done nothing to attempt, through a cooperative process, to enable Ms. Morris to work.  The actions of Ms. Morris' supervisor and her agency did not constitute the reasonable effort which every employer must make to determine, through a flexible, interactive process, an appropriate accommodation for her.  29 C.F.R. pt. 1630, app.; *see also Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 677 (1st Cir. 1995).

### H.  Ms. Morris' request to work from home was reasonable

Work from home is not *per se* an unreasonable accommodation, and plaintiff was entitled to make the request, and to benefit from the interactive process until her employer determined that it would pose an unreasonable hardship.  No employer, especially one as large and wide-ranging as the EPA, can refuse to consider a work-at-home accommodation out of hand.  *Humphrey v. Memorial Hosps. Ass'n*, 239 F.3d 1128, 1136-37 (9th Cir. 2001), citing *Langon v. Department of Health and Human Servs.*, 295 U.S. App. D.C. 49, 959 F.2d 1053, 1060 61 (D.C. Cir. 1992) (holding that an employer must consider requested accommodation of working at home); *see Carr v. Reno, supra*, 23 F.3d 525 (recognizing, even at the dawn of telecommuting, that an employee might report to work, in the unusual case, at home).  As the court observed in *Humphrey*:

> "There is at least a triable issue of fact as to whether Humphrey would have been able to perform the essential duties of her job with the accommodation of a work at home position. Working at home is a reasonable accommodation when the essential functions of the position can be performed at home and a work at home arrangement would not cause undue hardship for the employer. EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, FEP (BNA) 405:7601, at 7626 (March 1, 1999)."

At a minimum, at the pleading stage, plaintiff's case cannot be decided based on her request for a work-at-home accommodation.

### I.  Plaintiff has stated a claim for retaliation

EPA's contentions in opposing Ms. Morris' retaliation claim range from the fanciful to the absurd.  For example, although she has now been terminated, EPA asserts that Ms. Morris has "failed to allege any materially adverse consequences."  (Motion, at 28.)  The Rehabilitation Act incorporates ADA §107, which in turn incorporates "[t]he powers, remedies, and procedures set forth in sections 705, 706, 707, 709, and 710 of the Civil Rights Act of 1964," 42 U.S.C. §12117.  Thus, courts apply Title VII's *McDonnell Douglas* burden-shifting framework to

retaliation claims under the Rehabilitation Act when employers assert non-retaliatory grounds for adverse employment actions. *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007); *Smith v. District of Columbia*, 368 U.S. App. D.C. 361, 430 F.3d 450, 455 (D.C. Cir. 2005); *Barth v. Gelb*, 303 U.S. App. D.C. 211, 2 F.3d 1180, 1186 (D.C. Cir. 1993).

The plaintiff in a claim for retaliation need only allege (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Smith*, 430 F.3d at 455; *see also McDonnell Douglas*, 411 U.S. at 802.

In *Woodruff*, one instance of the plaintiff's protected activity took place in August, 1998, and the employer in September, 1998, revoked some of the accommodations the plaintiff had previously enjoyed. This, without more, was held to be sufficient to establish a prima facie claim of retaliation. *Woodruff v. Peters*, 482 F.3d at 529.

Defendant's retaliatory motive may be proved by circumstantial evidence, including evidence that the defendant's stated reason for adverse action was pretextual, combined with evidence of the prima facie case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 512, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) (factfinder's disbelief of the reasons put forward by the defendant may, together with the elements of the prima facie case, suffice to show intentional discrimination).

No court has established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for the purpose of establishing a causal connection. *See Hayes v. Shalala,* 902 F. Supp. 259, 264 (D.D.C. 1995) (adverse action taken at the first time the plaintiff was vulnerable to such action could account for a lapse of two years or more); *cf. Davis v. Ashcroft,* 355 F. Supp. 2d 330 (D.D.C. 2005) (a year and a half considered too great a lapse *in the absence of other evidence*). A lapse of five months between the activity and the adverse

36

action has been held to support an inference of causation, without other extenuating facts. *Castle v. Bentsen*, 867 F. Supp. 1 (D.D.C. 1994) (Ritchey, J.)  In *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 485 (7th Cir. 1996) the court observed that "additional circumstances" may extend the amount of time between protected activity and adverse action from which retaliation may be inferred, citing *Moss v. Southern Ry. Co.*, 41 Fair Empl. Prac. Cas. (BNA) 553 (N.D. Ga. 1986) (one year time span between expression and retaliation did not defeat plaintiff's claim where termination was disproportionately severe punishment for minor error); *Ross v. Kansas Comm'n on Civil Rights*, 45 Fair Empl. Prac. Cas. (BNA) 1476 (D. Kan. 1985) (one year time span did not defeat plaintiff's claim in light of plaintiff's prior outstanding job performance); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir. 1992) (plaintiff's verdict affirmed, despite fourteen month time span between expression and retaliation, where retaliation occurred two months after the EEOC dismissed the complaint).

In the instant case, plaintiff is entitled to all reasonable inferences not only from the timing of adverse actions taken against her in relation to her complaints of disability discrimination, but also from the words and conduct of her supervisor who obstructed her efforts to do her job with a reasonable accommodation at every turn.

## III.  Conclusion

On the basis of the foregoing arguments and authorities, defendant's motion to dismiss should be denied.  If the Court is inclined to grant defendant's motion in any respect, plaintiff

/ / /

respectfully requests a hearing, and leave to further amend her complaint.

Respectfully submitted,

KARR & ALLISON, P.C.
Theodore S. Allison

By: _____/s/    Theodore S. Allison_____
Theodore S. Allison  (D.C.Bar #441089)
1300 19th Street, N.W., Suite 402
Washington, D.C.  20036
Telephone (202) 331-7600
Facsimile  (202) 293-3999

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on November 10, 2007, I served a copy of the foregoing opposition on the interested parties by placing the same in the United States mail, first class postage prepaid, addressed to:

        Michelle Johnson, Esq.
        Assistant U.S. Attorney
        555 4th Street, N.W. - Civil Division #E4212
        Washington, DC  20530

        Nancy J. Dunham, Esq.
        U.S. Environmental Protection Agency
        Office of General Counsel (2377A)
        Ariel Rios Building North, Rm 7454D
        1200 Pennsylvania Avenue, N.W.
        Washington, D.C.  20460

                  /s/   Theodore S. Allison

**United States District Court for the District of Columbia**

| | | |
|---|---|---|
| Connie K. Morris, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07-00491 (RWR) |
| v. | ) | |
| | ) | |
| Stephen L. Johnson, Administrator, | ) | |
| United States Environmental | ) | |
| Protection Agency | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

The Court having considered the motion of defendant to dismiss plaintiff's first amended complaint, and any opposition, and finding the motion to be without merit, it is, this ___ day of _____, 2007,

ORDERED, that the motion to dismiss be and hereby is denied, and further

ORDERED, that defendant shall file an answer to the first amended complaint within ___ days of the date of entry of this order.

IT IS SO ORDERED.

Dated: _____

_____
United States District Judge

Copies to:

Theodore S. Allison
1300 19th Street, N.W., Suite 402
Washington, D.C.  20036

(cont.)

40

Michelle Johnson, Esq.
Assistant U.S. Attorney
555 4th Street, N.W. - Civil Division #E4212
Washington, DC  20530

Nancy J. Dunham, Esq.
U.S. Environmental Protection Agency
Office of General Counsel (2377A)
Ariel Rios Building North, Rm 7454D
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460