**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| **CONNIE K. MORRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 07-0491 (RWR)** |
| | ) | |
| **STEPHEN L. JOHNSON,** | ) | |
| **ADMINISTRATOR, UNITED STATES** | ) | |
| **ENVIRONMENTAL PROTECTION** | ) | |
| **AGENCY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

---

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF
HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Defendant, Stephen L. Johnson, Administrator, United States Environmental Protection Agency ("EPA"), hereby files his reply in further support of his motion to dismiss plaintiff's first amended complaint. As with her prior opposition to defendant's motion to dismiss the initial complaint, plaintiff's opposition to defendant's motion to dismiss the first amended complaint ("Pl.'s Opp'n") is replete with misstatements of law and fact, and urges the Court to commit serious error. First, plaintiff incorrectly asserts that her claims do not present a "mixed case" despite the fact that she explicitly raises her termination and claims of discrimination in her complaint. Second, plaintiff urges the Court to overlook the fact that she failed to timely amend her complaint to allege her termination claims and has therefore failed to exhaust her administrative remedies as it concerns those claims. Third, none of plaintiff's assertions – in either her original or amended complaint – are sufficient to establish that she is disabled within the meaning of the Rehabilitation Act. Fourth, the accommodation plaintiff sought – to work

permanently from home – was per se unreasonable.  And finally, plaintiff has failed to assert a

viable claim of retaliation.  In sum, despite amending her complaint in an effort to assert viable

claims, plaintiff's claims remain subject to dismissal.

## ARGUMENT[1]

### I.     PLAINTIFF'S FAILURE TO PROPERLY EXHAUST HER ADMINISTRATIVE REMEDIES FORECLOSES ANY CLAIMS REGARDING HER TERMINATION.

Plaintiff urges serious error upon the Court when she contends that her termination and

related claims are properly before this Court.[2]  Plaintiff has taken several steps to arrive at her

erroneous conclusion.  First, plaintiff erroneously concludes, without any authority, that her

---

[1]Plaintiff's opposition continues to recite the out-dated legal standard for the Court's review of defendant's motion to dismiss.  See Pl.'s Opp'n at 3-4; 11-12.  As defendant previously noted in his reply in support of his motion to dismiss the original complaint, the Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted) (emphasis added).  Thus, in order for a complaint to survive dismissal, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. (citations omitted).  This requires a plaintiff seeking to avoid dismissal to state "circumstances, occurrences and events" that support the legal claim presented rather than merely make a "bare averment" that he is entitled to relief.  Id. at 1965 n.3.  Dismissal is required if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

[2]As she did in her prior opposition, plaintiff continues to contend that the EEOC Administrative Judge's decision in this matter has no relevance in this lawsuit because this Court considers the case de novo.  Pl.'s Opp'n at 4.  Defendant previously alerted plaintiff to the fallacy of this statement.  Yet, plaintiff persists in citing Scott v. Johanns, 409 F.3d 466 (D.C. Cir. 2005), a case that does not support her notion that administrative rulings have no "relevance" in a subsequent federal lawsuit.  In fact, that case observed that "[i]n all cases, administrative findings may 'be admitted as evidence.'"  Id. at 470.  Second, plaintiff's contention is at odds with Supreme Court precedent.  In Chandler v. Roudebush, 425 U.S. 840 (1976), a case cited in Scott, the Supreme Court explicitly stated that "[p]rior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial de novo. . . . Moreover, it can be expected that, in light of the prior administrative proceedings, many potential issues can be eliminated by stipulation or in the course of pretrial proceedings in the District Court."  Id. at 864 & n.39.  Thus, while plaintiff is entitled to de novo review of her claims in this Court, it is simply not true that the prior administrative findings in this matter will be "irrelevant" to the issues before this Court.

2

termination does not present a "mixed" case over which the Merit Systems Protection Board ("MSPB") could have exercised jurisdiction. Pl.'s Opp'n at 7. Second, plaintiff contends that she has timely exhausted her termination claims because the original complaint was filed after her termination and sought relief from her termination, and therefore she was not required to amend her complaint upon the agency's dismissal of the administrative complaint. Id. at 5-6. And finally, plaintiff contends that she is wholly excused from exhausting her administrative remedies as it concerns her claims of retaliation. Id. at 12-14. Because each of the steps of her analysis are flawed, dismissal is required of plaintiff's termination and related claims.[3]

### A.    Plaintiff's Termination Claim Presents a Mixed Case.

Plaintiff cryptically contends that her 2007 "administrative complaint did not challenge her removal in a way that would implicate the jurisdiction of the [MSPB]." Pl.'s Opp'n at 7. Plaintiff's proposition could not be more wrong. "A mixed case is 'an adverse personnel action subject to appeal to the MSPB coupled with a claim that the action was motivated by discrimination." Frank v. Ridge, 310 F. Supp. 2d 4, 8 (D.D.C. 2004) (quoting Butler v. West, 164 F.3d 634, 638 (D.C. Cir. 1999). Clearly, plaintiff's claims alleging her termination, an agency action over which the MSPB has jurisdiction, see 5 U.S.C. § 7512, combined with her claims of discrimination under the Rehabilitation Act, presents a "mixed" case of discrimination. 5 U.S.C. § 7702(a)(1). Because plaintiff's case is a "mixed case," both 5 U.S.C. §§ 7702 and

---

[3]These claims include plaintiff's supervisors' alleged failure to engage in the interactive process, Compl. ¶ 62; her subsequent assignment to Potomac Yard, Am, Compl. ¶ 23; her supervisor's request for documentation regarding Plaintiff's alleged disability, see, e.g., id. ¶ 29; her reassignment to EPA East, id. ¶ 52; the various allegations concerning her requests for sick leave and her placement on "absent without leave" ("AWOL") status, id. ¶¶ 33-52, as well as the February 5, 2007 proposal to terminate her, id. ¶ 56, and her termination, id. ¶¶ 56, 65. See also Defendant's Motion to Dismiss the First Amended Complaint ("Def.'s Mot. Re: Am. Compl."), Ex. 2 (Plaintiff's 2007 administrative complaint).

3

7703 are applicable and plaintiff was required to timely file her claims related to her 2007

administrative complaint with the Court within 30 days after the agency's dismissal of those

claims. See 29 C.F.R. § 1614.310(a).[4]

### B.    Plaintiff Has Failed to Timely Amend Her Complaint to Allege Her Termination Claims.

Next, plaintiff contends that she was not required to amend her complaint to allege her

termination and related claims because "the original complaint was filed after [she] was

terminated, and sought relief from termination." Pl.'s Opp'n at 5. Thus, according to plaintiff,

when she exhausted her administrative remedies concerning her termination, "any procedural

defect was cured." Id. As a preliminary matter, it is worth noting that the original complaint did

not allege any facts concerning plaintiff's termination, but only the proposal to terminate

plaintiff. Cf. Original Complaint ("Compl.") ¶ 56 with Am. Compl. ¶ 56.[5]

Plaintiff's argument reveals her misunderstanding of the requirements of the exhaustion

requirement. Any claims regarding her termination raised in her original complaint were not

properly before the Court because she had failed to exhaust her administrative remedies at that

---

[4]Plaintiff's contention that sections 7702 and 7703 only "govern appeals or actions following decisions of the [MSPB], not an agency such as the EPA[,]" Pl.'s Opp'n at 12, reveal her misunderstanding of the statutory requirements. 5 U.S.C. section 7702 sets forth various requirements for the MSPB, see 5 U.S.C. § 7702(a)(2) when processing mixed cases. Notably, the EEOC regulation governing the filing of a civil action in a mixed case complaint specifically references the underlying authority as 5 U.S.C. § 7702. See 29 C.F.R. § 1614.310. Moreover, the District of Columbia Circuit, in Butler v. West, made it apparent that 5 U.S.C. § 7702 is applicable to federal agencies, such as the EPA, when they are processing mixed case appeals and mixed case complaints. 164 F.3d 634, 639 (D.C. Cir. 1999) ("5 U.S.C. § 7702 contains the statutory provisions directly addressing the procedural path of a mixed case . . ."). Notably, the Butler court explicitly differentiated the process applicable to a "mixed case appeal" and a "mixed case complaint" under section 7702. Id.

[5]While plaintiff's original complaint sought relief in the form of "an injunction reinstating her to her position . . ." Compl. at 20, there were no facts alleged in the complaint that would have merited such relief.

time because those claims had not been pending before the Agency for the requisite 180 days as required by 29 C.F.R. § 1614.407.  However, once plaintiff received the agency's May 8, 2007 final decision dismissing her 2007 administrative complaint, she had thirty (30) days to file the claim in federal district court.  29 C.F.R. § 1614.310(a).[6]  Plaintiff's belated attempt to assert her termination claims in this Court by filing an amended complaint on October 20, 2007, over five months after the dismissal of her claims by the agency, requires dismissal of those claims for failure to exhaust her administrative remedies.  See, e.g., Brown v. General Services Admin., 425 U.S. 820 (1976); Butler v. West, 164 F.3d 634, 638 (D.C. Cir. 1999).

Plaintiff confusingly claims that the EPA has asserted "a conflicting position: that Plaintiff should have amended her complaint not only before the expiration of 180 days from the filing of the administrative charge, but within 30 days of its dismissal, or by June 7, 2007."  Pl.'s Opp'n at 1.[7]  Rather, defendant has clearly articulated the statutory and regulatory prerequisites that any litigant, including plaintiff, must comply with prior to asserting her claims in court.  See 42 U.S.C. § 2000e-16(c) (requiring Title VII claimants to exhaust their remedies prior to initiating a civil lawsuit); 29 U.S.C. § 794(a)(1) (incorporating Title VII's remedies for claims under the Rehabilitation Act).  As defendant previously explained, plaintiff could not assert her claims asserted in her April 2007 administrative complaint at the time she filed her original

---

[6]Alternatively, plaintiff could have filed an appeal of the agency's dismissal with the MSPB.  29 C.F.R. § 1614.302(d)(ii).

[7]Plaintiff also states that the EPA is "judicially estopped[,]" from taking a conflicting position in this litigation.  Pl.'s Opp'n at 1.  This assertion is without merit.  Not only does plaintiff fail to provide any substantive argument for her contention, she fails to provide any basis for the Court to overlook "the Supreme Court's powerful cautions against application of the [equitable estoppel] doctrine against the government . . . ." which the District of Columbia Circuit has construed as barring use of the doctrine "to undercut statutory exhaustion requirements . . . ."  Rann v. Chao, 346 F.3d 192, 197 (D.D.C. 2003) (citing Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 419-24 (1990)) (other citations omitted).

complaint because they had not been pending with the agency for the requisite 180 days as required by 29 C.F.R. § 1614.407.  However, once those claims were dismissed, plaintiff had 30 days, as provided by 29 C.F.R. § 1614.310(a), to assert those claims in this Court.  Plaintiff failed to do so.  That EPA has identified multiple components of the administrative process that plaintiff has ignored or attempted to bypass is hardly taking an inconsistent position; failure to meet any one of the statutory or regulatory steps mandates the same result – a bar on the claims in federal court.  See, e.g., Brown v. General Services Admin., 425 U.S. 820 (1976); Kizas v. Webster, 707 F.2d 524, 544 & n.99 (D.C. Cir. 1983).

### C. Plaintiff Was Required to Exhaust Her Claims of Retaliation.

Plaintiff persists in her erroneous belief that claims of retaliation need not be separately exhausted and thus any claims of retaliation that were raised in her 2007 administrative complaint were not required to have been exhausted.  Pl.'s Opp'n at 12.  The fact that plaintiff continues to assert such an argument – in light of the case law cited by defendant in his reply brief directed at the original complaint – is remarkable.  Notably, the cases plaintiff cites in support of this proposition, see Pl.'s Opp'n at 12-13; 14, were all decided prior to the Supreme Court's holding in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002), which held that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges."  Id.  As defendant previously informed plaintiff, there is simply nothing in Morgan that indicates its reasoning does not apply to claims of retaliation, and in fact courts in this district have held that Morgan extends to such claims. See, e.g., Camp v. District of Columbia, No. Civ.A. 04-234, 2006 WL 667956, at *8 (D.D.C. Mar. 14, 2006) (holding that Morgan extended to plaintiff's claim of retaliatory termination and

6

denying plaintiff's request to amend her complaint to include her alleged retaliatory termination as such amendment would be futile); Adams v. Mineta, No. Civ.A. 04-856, 2006 WL 367895, at *5 (D.D.C. Feb. 16, 2006) (holding that Morgan applied to claims of retaliation and "plaintiff's failure to exhaust her administrative remedies bars her from litigating her claim of retaliation before this Court in the first instance."); Nurriddin v. Goldin, 382 F. Supp. 2d 79, 92 (D.D.C. 2005) (holding that Morgan's reasoning applies to "all discrete acts of discrimination or retaliation[,]" and noting that "Morgan rejected plaintiff's pattern and practice argument for discrete acts of discrimination or retaliation that had not been separately exhausted but were 'sufficiently related' to a properly exhausted claim.") (emphasis added) (citing Morgan, 536 U.S. at 105); Graham v. Gonzales, No. Civ.A. 03-1951, 2005 WL 3276180, at *5 (D.D.C. 2005) (holding that plaintiff's termination was a "discrete act" for which he was required to exhaust his administrative remedies and rejecting plaintiff's argument that his termination was in fact the "culmination" of his hostile work environment claim and thus did not have to be separately exhausted.); Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 149 (D.D.C. 2005) (holding that Morgan extends to claims of retaliation and requiring plaintiff to establish that "he exhausted his administrative remedies with respect to each discrete act of retaliation."); Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 138 (D.D.C. 2004) (applying Morgan's rationale to claims of retaliation and holding that "[i]ndividual acts of retaliation that form the basis of retaliation claims also are included within the Supreme Court's list of discrete discriminatory acts and therefore, any claim stemming from those acts must be administratively exhausted."), amended

on reconsideration in part, 400 F. Supp. 2d 257 (D.D.C. 2005).[8]  Cf. Jones v. University of the

District of Columbia, No. Civ.A. 05-1187, 2007 WL 2332311, at *4 (D.D.C. Aug. 17, 2007)

(holding that even if the "reasonably related" test was still good law, it "should be narrowly read

after Morgan . . . ." and finding that allegations were not "reasonably related to the allegations in

the EEOC complaint of discrete discriminatory actions taken within a specific timeframe.")

(citations omitted); Hazel v. WMATA, No. Civ.A. 02-1375, 2006 WL 3623693, at *8 (D.D.C.

Dec. 4, 2006) (holding that plaintiff's subsequent allegations "fit within the narrow category of

claims . . . ." that had been previously asserted in her prior administrative complaint).[9]  These

cases amply demonstrate that plaintiff's contention that claims of retaliation need not be

separately exhausted is simply wrong.[10]

---

[8]Ignoring the Coleman-Adebayo court's application of Morgan to a retaliation claim, plaintiff seizes upon the court's footnote in which the court suggested that where, for example, an employee is denied his request to attend religious services, each subsequent denial would not have to be independently exhausted.  Coleman-Adebayo, 326 F. Supp. 2d at 139 & n.3.  Plaintiff misinterprets this statement by the court as "recognizing that a claimant is not required to file successive administrative charges when the basis for the alleged discrimination is the subject of a pending administrative action . . . ."  Pl.'s Opp'n at 13.  That is simply not the case.  The court was envisioning a scenario "in which the discriminatory acts or retaliatory conduct is so pervasive and ongoing that the exception to exhaustion recognized in Morgan for hostile-work environment cases may be applied directly or extended by analogy."  Coleman-Adebayo, 326 F. Supp. 2d at 139 & n.3.  This footnote by the Coleman-Adebayo court in no way altered the court's holding that Morgan requires exhaustion of discrete claims of retaliation.  Id. at 138-39.

[9]Plaintiff contends that "the law is clear that an administrative charge is deemed to include any matter that could be investigated during the pendency of the charge that is reasonably related to it."  Pl.'s Opp'n at 11.  According to plaintiff her administrative charge "was pending from August 10, 2005, through December 19, 2006."  Id.  Even assuming this was the correct legal standard, it is clear that plaintiff's charge could not include the proposal to terminate her, which occurred in February 2007, Am. Compl. ¶ 56, or her subsequent termination, as that occurred on March 10, 2007.  Id.

[10]To the extent that plaintiff urges the Court to ignore the exhaustion requirement in this case because it would further "the policy embodied in the Civil Service Reform Act of 1978[,]" Pl.'s Opp'n at 10, the Court is not free to make such an exception. The District of Columbia Circuit has held that the Rehabilitation Act "mandat[es] administrative exhaustion[,]" and that "a court may not read futility or other exceptions into statutory exhaustion requirements where Congress has not provided otherwise."

**D.    None of Plaintiff's Remaining Arguments Excuse Her Failure to Properly Exhaust Her Administrative Remedies.**

Plaintiff's remaining attempts to excuse her failure to properly exhaust her claims are fruitless.  First plaintiff contends, relying on Quarles v. General Investment & Development Co., 260 F. Supp. 2d 1 (D.D.C. 2003), that "'receipt of a right-to-sue notice during the pendency of a Title VII action cures the defect caused by the failure to receive a right-to-sue notice before filing a Title VII claim in federal court.'"  Id. at 17 & n.13; see also Pl.'s Opp'n at 5-6.  Thus, according to plaintiff, the agency's dismissal of her administrative complaint "cured" any failure to exhaust, the same "as though [p]laintiff had received a right-to-sue letter."  Plaintiff's argument misses the mark.  The right-to-sue letter, which is a part of the private sector administrative process and not applicable to federal employees, is one condition precedent to the initiation of a civil action in federal court.  See 42 U.S.C. § 2000e-5(f)(1).  The right-to-sue letter informs the "aggrieved person" of the right to bring a civil action within "ninety days" of the receipt of the letter.  Id.  Another condition precedent to filing a civil action, however, is the timely filing of the civil action within 90 days of receipt of the right-to-sue letter.  The situation present here – where plaintiff wholly failed to assert her termination claims and failed to do so within 30 days of the agency's dismissal of her administrative claim – is simply not analogous to the situation presented in Quarles or the other cases cited by plaintiff involving receipt of a right-to-sue notice during the pendency of a lawsuit.

Plaintiff next contends that the agency improperly dismissed her claim pursuant to 29

---

Spinelli v. Goss, 446 F.3d 159, 162 (D.C. Cir. 2006).

C.F.R. § 1614.107(c)[11] and therefore its "dismissal is a nullity . . . ." Pl.'s Opp'n at 7. Pursuant to 29 C.F.R.§ 1614.407(a)(3), an agency may dismiss an administrative complaint "[t]hat is the basis of a pending civil action in a United States district court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint, or that was the basis of a civil action decided by a United States District Court in which the complainant was a party[.]" Here, plaintiff filed her administrative complaint on April 13, 2007, see Def.'s Mot., Ex. 2, and the agency dismissed the complaint in a letter dated May 8, 2007. See Def.'s Mot., Ex. 7. According to plaintiff, this renders the dismissal a "nullity" because the complaint had not been pending for 180 days. Pl.'s Opp'n at 7, 9. Aside from failing to provide any case law to support her claims, plaintiff overlooks the fact that she expressly indicated in her administrative complaint that she sought to have the claims raised in that complaint resolved in her pending action in district court. See Ex. 7, at 2 ("On the second page of your client's formal complaint she states that: 'As a matter of procedure, [she] will seek to have the issues raised by this complaint decided in the action [she] filed on or about February 14, 2007, in United States District Court."). Therefore, the dismissal of the complaint prior to the expiration of the 180 days was not a "nullity" but was consistent with plaintiff's directive. Furthermore, to the extent plaintiff believed that the dismissal was contrary to law or otherwise improper, she could have appealed the dismissal to the MSPB, something she did not do. See 29 C.F.R. § 1614.302(d)(ii).

Next, plaintiff contends that the Court should excuse her failure to timely exhaust her remedies because the EPA's dismissal notice "failed to notify [her] of all of her remedies when it dismissed her EEO complaint." Pl.'s Opp'n at 7. Plaintiff, citing the regulations applicable to

---

[11]The proper regulatory citation is 29 C.F.R. 1614.107(a)(3).

dismissal of mixed case complaints despite her alleged contention that her complaint was not a mixed case, contends that the agency failed to provide plaintiff with notice of her right to file a civil action. Id. at 8. Plaintiff's assertions are belied by reference to the dismissal notice, attached as Exhibit 7 to defendant's motion to dismiss. There, the EPA's Office of Civil Rights issued its final decision, identified the termination claim as a "mixed case complaint" under 29 C.F.R. § 1614.302(a), explicitly informed plaintiff that the letter was the agency's final decision and that she had the right to appeal " within 30 calendar days of [her] receipt of this final agency decision." Def.'s Mot., Ex. 7, at 2. The letter further advised that plaintiff's mixed case complaint was governed by EEOC regulations found at 29 C.F.R. § 1614.302(d), which clearly put plaintiff on notice that she had the "right to appeal the matter to MSPB (not EEOC) within 30 days of receipt . . ." and had the "right to file a civil action as provided at 1614.310(a)." 29 C.F.R. § 1614.302(d). Notably, 29 C.F.R. § 1614.310(a), cited in the agency's letter, Def.'s Mot., Ex. 7, at 2, clearly informed plaintiff, who had already filed her complaint in this Court, of her right to file a civil action in federal district court "[w]ithin 30 days of receipt of a final decision . . ." issued by the agency, unless "an appeal is filed with the MSPB." 29 C.F.R. § 1614.310(a). For these reasons, plaintiff's citations to Wilson v. Pena, 79 F.3d 154, 164 (D.C. Cir. 1996), wherein the EEOC's notice informed the claimant of the incorrect time limits for initiating a civil action, and Williams v. Hidalgo, 663 F.2d 183, (D.C. Cir. 1980), wherein the agency's "'notice' never included any statement as to appellant's right to proceed to court . . . ." are inapposite.

### III.    PLAINTIFF IS NOT DISABLED WITHIN THE MEANING OF THE REHABILITATION ACT.

Plaintiff in this case contends that she is disabled under the Rehabilitation Act despite the fact that her alleged "disability" miraculously disappears once she is in the comfort of her own home.  Pl.'s Opp'n at 18 ("The simplistic suggestion that plaintiff is not disabled because she does not experience symptoms of her condition in her residence . . . where she has sufficient control over her environment and activities to eliminate the causes of her symptoms, establishes nothing.") (citing Am. Compl. ¶ 14).  The Rehabilitation Act was not intended to protect persons with such fleeting disabilities.  Rather, to be considered a qualified individual with a disability under the Rehabilitation Act, a plaintiff must demonstrate that she has an impairment that has a "permanent or long-term[ ]" impact.  Toyota Motor Manufacturing, Kentucky Inc. v. Williams, 534 U.S. 184, 198 (2002) (citing 29 C.F.R. § 1630.2(j)(2)(ii)-(iii) (2001) (emphasis added).  Furthermore, the alleged impairment must "substantially limit" one or more of plaintiff's "major life activities . . . ."  29 U.S.C. § 705(20)(B).

In his motion, defendant clearly articulated why plaintiff's alleged impairment – which she has described as "a yeast sensitivity which in turn causes her to be sensitive to small concentrations of other molds and even chemicals in the workplace and elsewhere[,]" Am Compl. ¶ 12, fails to pass muster under the Rehabilitation Act.[12]  First, plaintiff fails to allege

_____

[12]Despite amending her complaint, plaintiff continues to fail to specify the locations, in addition to work, where she allegedly suffers from her alleged impairment, alleging merely that she suffers from the impact of her alleged impairment at work and "elsewhere[.]" Am. Compl. ¶ 12.  This failure to specify the locations where she allegedly suffers from her impairment strengthens defendant's argument that plaintiff has failed to assert a proper claim for relief.  See Twombly, 127 S. Ct. 1965 & n.3 (holding that in order to avoid dismissal, a plaintiff is required to state "circumstances, occurrences and events" that support the legal claim presented rather than merely make a "bare averment" that she is entitled to relief).  Furthermore, any allegation that plaintiff suffers from alleged symptoms outside of the EPA

(and cannot demonstrate) that her alleged impairment substantially limits one or more of her major life activities. Based on plaintiff's own arguments, her alleged impairment is essentially "cured" by permitting her to work at home. Am. Compl. ¶ 17 ("Ms. Morris and her physician requested that she be allowed to perform substantially all of her job duties from her home as a reasonable accommodation."); Pl.'s Opp'n at 18 ("[P]laintiff . . . does not experience symptoms of her condition in her residence . . . where she has sufficient control over her environment and activities to eliminate the causes of her symptoms . . . ."). Plaintiff does not address, never mind distinguish, the District of Columbia Circuit's holding in Haynes v. Williams, 392 F.3d 478, 483 (D.C. Cir. 2004), wherein the court held that "[i]f the impact of an impairment can be eliminated by changing the address at which an individual works, that impairment is neither permanent nor long term."[13] Here, despite her vague reference to allegedly experiencing the impact of her alleged impairment "elsewhere," it is clear that plaintiff's allegations solely concern the alleged impacts she suffers only when she reports to work at EPA work sites. Am. Compl. ¶ 12 (noting that plaintiff's "physicians have reported to EPA the nature of her condition, and reasons why it is harmful to her health to report to work at various EPA work sites.") (emphasis added); ¶ 22

---

workplace is belied by the allegations of her 2005 and 2007 administrative complaints, wherein plaintiff described her alleged impairment as a "workplace sensitivity . . . ." Def.'s Mot., Exs. 2 & 5 (emphasis added).

[13]Plaintiff fails to address defendant's arguments that she does not have a "record of an impairment that significantly limits one or more of her major life activities" or that she was not regarded by EPA as having such an impairment. Def.'s Mot. at 18-21. By failing to address these arguments, she has effectively conceded them. Hopkins v. Women's Div., General Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997)); see also United States v. Real Prop., Parcel No. 03179-005R, No. Civ. A. 01-0706, 2003 WL 224053382 at *12 (D.D.C. Oct. 21, 2003); Bancoult v. McNamara, 227 F. Supp. 2d 144, 149 (D.D.C. 2002).

(alleging that plaintiff "had her most severe reactions" at EPA headquarters); ¶ 24 alleging that

plaintiff "suffered numerous severe allergic reactions in her workplace . . . ."); ¶ 26 (noting that

plaintiff "requested advance sick leave . . . for a 'workplace allergic reaction.'") (emphasis

added); ¶ 36 ("Ms. Morris remained ill . . . because of a workplace reaction. . . .") (emphasis

added); ¶ 37 ("Ms. Morris was struggling to work, and continually becoming ill because of her

workplace environment . . . .") (emphasis added); ¶ 52 (alleging that plaintiff had "her most

severe reactions" at the EPA East building); ¶ 53 (alleging that one of plaintiff's doctors

recommended that plaintiff "not return to the building which will trigger these symptoms.").  The

clear allegations of plaintiff's complaint demonstrate that her alleged impairment arises only

when she is working in the EPA's buildings and thus, she does not have an impairment that is

long-term or permanent.  She is, therefore, not disabled within the meaning of the Rehabilitation

Act.

        Plaintiff contends that defendant's motion "overlooks plaintiff's allegation that her

disability limits her in activities such as breathing, walking and thinking."  Pl.'s Opp'n at 19

(citing Am. Compl. ¶ 12).  Defendant has not "overlooked" this allegation; plaintiff fails to assert

that she is "substantially limited" in the major life activities of breathing, walking, or thinking.

Rather, paragraph 14 of the first amended complaint alleges, in part:

> At all relevant times, Ms. Morris has suffered from a disability. . . . Dr.
> Christopher Holland, of EPA, spoke with Ms. Morris's physician and
> learned that she suffers from a yeast sensitivity which in turn causes her to
> be sensitive to small concentrations of other molds and even chemicals in
> the workplace and elswhere.  Exposure to these agents causes Ms. Morris
> to suffer severe and life threatening allergic reactions; [i]n this way, the
> disability substantially limits Ms. Morris in one or more major life activities,
> including travel, visiting in the homes of family and friends, entertainment,
> dining out and shopping, and others.  Ms. Morris' physician reported to

14

EPA that <u>Ms. Morris has sensitivities to mold and dust mites, causing muscle weakness, breathing problems, problems with walking, thinking,</u> elevated blood pressure, and swelling.

Am. Compl. ¶ 12.  A plain reading of this paragraph reveals that plaintiff does not allege that she is substantially limited in the major life activities of breathing, walking, and thinking.  At most, it alleges that plaintiff's physicians informed EPA that Ms. Morris has "problems with" breathing, walking, and thinking.  However, even assuming that plaintiff did establish that she was affected in the major life activities of breathing, walking, and thinking, she would still fail to show that she is substantially limited in these activities, as required by the Rehabilitation Act, because her problems only arise when she is in the workplace, and not in her home.[14]

Finally, plaintiff places much weight on the fact that EPA recognized plaintiff as having a disability.  <u>See</u> Pl.'s Opp'n at 18 ("In fact, EPA . . . found on July 7, 2005 that Ms. Morris was an individual with a disability.'") (citing Am. Compl. ¶ 13); ("Plaintiff has alleged that she has a life-threatening condition that defendant expressly recognized as a disability.") (citing Am. Compl. ¶¶ 6, 53); Pl.'s Opp'n at 19 ("Finally, notwithstanding plaintiff's specific allegations, and EPA's arguments, the complaint and First Amended Complaint both alleged that Ms. Morris' employer itself <u>recognized</u> her condition as a qualifying disability.").  Plaintiff's reliance on this

---

[14]Plaintiff continues to improperly rely on <u>Tangires v. John Hopkins Hosp.</u>, 79 F. Supp. 2d 587 (D. Md. 2000), <u>aff'd</u>, 230 F.3d 1354 (4th Cir. 2000), in support of her argument that "breathing difficulties and chemical sensitivity constitute disabilities[,]" Pl.'s Opp'n at 18, despite the fact that the court held in that case that the plaintiff's asthma was not a disability under the ADA because it was "correctable by medication . . . [,]" and the court did not address "chemical sensitivities" as alleged by plaintiff.  <u>Id.</u> at 596.  Defendant previously alerted plaintiff to this fact in his initial motion.  <u>See</u> Defendant's Reply in Further Support of his Motion to Dismiss the Complaint, at 10 & n.9.  Nor does <u>Battle v. Mineta</u>, 387 F. Supp. 2d 4, 8 (D.D.C. 2005) support plaintiff's argument that breathing "difficulties and chemical sensitivities constitute disabilities."  Pl.'s Opp'n at 18.  Rather, the page of <u>Battle</u> cited by plaintiff merely states: "The D.C. Circuit has yet to decide whether the ability to interact with others is a major life activity like 'caring for one's self, performing manual tasks, walking, seeing, breathing, learning, and working.'"  387 F. Supp. 2d at 8 (quoting 45 C.F.R. § 84.3(j)(2)(ii)).

fact reveals her misunderstanding of the Rehabilitation Act's requirement.  That her employer, or her doctors, have found her to have a "disability" does not mean that she is indeed "disabled" within the meaning of the Rehabilitation Act.  Thus, the fact that EPA found her to have a disability, and attempted to accommodate that disability, does not translate into a finding that plaintiff is indeed disabled within the meaning of the Rehabilitation Act.  See, e.g., Thompson v. Rice, 422 F. Supp. 2d 158, 175 (D.D.C.2006)("'an employer's attempts to accommodate an employee's concerns and perceived needs do not establish that the employer regarded the employee as having a disability.'") (citation omitted).

## IV.    PLAINTIFF IS NOT OTHERWISE QUALIFIED FOR HER POSITION.

According to plaintiff, her job position as a "senior member" of the Federal Register Staff did not really require her to work in the office.  Am. Compl. ¶ 10; Pl.'s Opp'n at 21.  This, plaintiff contends, is supported by the position description that pertains to her position and the fact that she has, in the past, worked from home.  Pl.'s Opp'n at 22.

In his motion to dismiss, defendant explained why plaintiff's position indeed requires her to be at the office.  Def.'s Mot. at 21-22.  Plaintiff fails to address defendant's contention that she cannot "provide leadership in executing editorial policy and priorities . . . ." as well as "coordinat[e] the document preparation efforts of other information liaison specialists . . . ." working from home.  Def.'s Mot., Ex. 3, at 2.  Rather, plaintiff relies on the self-serving allegations of her complaint to support her baseless claim that her position description "require[s] neither physical presence nor face-to-face contact with others, either explicitly or implicitly." Pl.'s Opp'n at 21 (citing Am. Compl. ¶ 10).  As previously noted, supra, at 2 & n.1, even at the dismissal stage, plaintiff must do more than make a "bare averment" that she is entitled to relief

and this requires more than "a formulaic recitation of the elements of a cause of action . . . ."
Twombly, 127 S. Ct. at 1964-65.

Plaintiff next contends that "[d]efendant cannot establish, either at the pleading stage, or,
plaintiff contends, at trial, that essential functions of her position prevent her from working with
the accommodation she requested or some variant of it."  Pl.'s Opp'n at 22.  Plaintiff then goes
on to cite the EEOC Regulations, 20 C.F.R. § 1630.2(n), which she contends "govern the
determination of what constitutes an essential function of a position."  Id. at 23 (citing Taylor v.
Rice, 451 F.3d 898, 906 (D.C. Cir. 2006).[15]  Plaintiff's argument again misses the mark.  First,
the issue is not whether defendant can establish that the accommodation that plaintiff requested –
i.e., to work permanently from home – would have prevented her from working in general.
Rather, plaintiff has the duty to establish that she was otherwise qualified to perform the essential
functions of her position with or without a reasonable accommodation.  See, e.g., Brown v.
Snow, 407 F. Supp. 2d 61, 67 (D.D.C. 2005) (Noting that plaintiff must establish a prima facie
case of discrimination under the Rehabilitation Act by showing, in part, that "with reasonable
accommodation he could perform the essential functions of the position."); Dorchy v. WMATA,
45 F. Supp. 2d 5, 13 (D.D.C. 1999) (holding that plaintiff's "failure to establish that he can
perform the essential functions of his job, with or without reasonable accommodation, negates
his ability to establish a prima facie case of discrimination under the [ADA] . . . [and] the
Rehabilitation Act.") (citing 29 U.S.C. § 794(d)).  Thus, plaintiff, at the pleading stage, has the
burden to establish that her request to work permanently from home was reasonable and enabled

_____

[15]While the Taylor court did cite to the EEOC regulations, it did not make any pronouncement
that these regulations "govern the determination of what constitutes an essential function of a position."
451 F.3d at 906.

her to perform the essential functions of her position, which she has simply failed to do.

Second, even pursuant to the EEOC regulations cited by plaintiff, it is apparent that plaintiff's position required her to work in the office. The term "essential functions" is defined as "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Evidence regarding whether a particular function is essential includes, among other factors, "[t]he employer's judgment as to which functions are essential"; the "written job descriptions prepared . . . ."; "the amount of time spent on the job performing the function," and the "consequences of not requiring the incumbent to perform the function." Id. § 1630.2(n)(3). As previously discussed in his motion for dismissal, defendant's job position description clearly required that plaintiff be in the office to "provide leadership" to other staff members; and to "coordinate the document preparation efforts of other information liaison specialists . . . ." Def.'s Mot., Ex. 3, at 2. Furthermore, the work was "work station oriented" and required "use of dedicated specialized equipment." Id. at 10. Plaintiff does not dispute these requirements. Indeed, her citations to paragraphs of the complaint wherein she alleges that her supervisor stated that it was "necessary" for plaintiff to be present at an EPA facility to perform her duties supports a finding that attendance in the office was required and consistent with her employer's judgment, one of the factors set forth in 29 C.F.R. § 1630.2(n)(3)(I).[16] See also Rosell v. Kelliher, 468 F. Supp. 2d 39, 45 (D.D.C. 2006) (noting that

---

[16]Plaintiff provides unsupported statements that were allegedly made by her supervisor regarding the grant of work-at-home accommodations for other employees and contends that defendant failed to cooperate in the "interactive process" with plaintiff. Pl.'s Opp'n at 27-34. However, the fact that plaintiff herself was permitted to work from home on occasion, demonstrates that she was in fact accommodated. Am. Compl. ¶ 11. Defendant also provided other accommodations to plaintiff. Id. ¶¶ 11, 30. It is defendant's position, however, that permitting plaintiff to permanently work from home was not a reasonable accommodation.

"one of the fundamental requirements of <u>any</u> position is reporting to work[,]" and holding that

plaintiff was not a qualified individual under the Rehabilitation Act because his request to report

to work when he was medically able was unreasonable in light of his position description that

required him to participate in "team projects," interact with others inside and outside the agency,

provide "guidance" to others, and perform tasks under "short deadlines.") (emphasis added),

<u>aff'd</u>, No. Civ.A. 06-5168, 2006 WL 4056985, at *1 (D.C. Cir. Oct. 20, 2006).  For these

reasons, plaintiff has failed to demonstrate that she was otherwise qualified to perform the

essential functions of her position, with or without accommodation.[17]

## V.    PLAINTIFF'S REQUEST TO WORK PERMANENTLY FROM HOME AS A SENIOR MEMBER OF THE FEDERAL REGISTER STAFF WHO WAS RESPONSIBLE FOR COORDINATING THE EFFORTS OF OTHERS WAS PER SE UNREASONABLE.

An accommodation that eliminates the essential duties of an employee's position is <u>per se</u>

unreasonable.  This is so because "[t]he duty to accommodate does not require an employer to

relieve the employee of any essential functions of the job or modify the actual duties."

---

[17]Plaintiff devotes over eight pages of her opposition to arguing that the defendant never accommodated plaintiff and that defendant failed to engage in the interactive process. Pl.'s Opp'n at 27-31.  However, because defendant argues in his motion that (a) plaintiff is not an individual with a disability, and defendant had no duty to accommodate plaintiff or engage in the interactive process, and thus these issues raised by plaintiff are simply irrelevant in resolving defendant's motion to dismiss.  In any event, plaintiff's claims are belied by the allegations of her own complaint wherein she herself reveals that she was in fact accommodated and that the defendant engaged in the interactive process with her. Am. Compl. ¶ 11 ("In addition to being allowed to work from home temporarily in 2004 and 2005, Ms. Morris was assigned to work in the Crystal Station "clean space" for a number of months . . . ."); ¶ 16 (noting that plaintiff's supervisor "has worked closely with [plaintiff] when she was working primarily from home, directing her work . . . ."); ¶ 22 (noting that plaintiff was assigned to work at a "clean space . . . which was operated by EPA with various environmental limitations[,] and she was "generally able to work in the 'clean space.'"); ¶ 51(l) (EPA provided plaintiff with 200 hours paid leave through EPA's Leave Bank Program).  Thus, plaintiff's contention that she was not accommodated and that defendant failed to engage in the interactive process with her are patently false and not worthy of further rebuttal.

Clayborne v. Potter, 448 F. Supp. 2d 185, 191-92 (D.D.C. 2006).  See also Mulloy v. Acushnet Co., 460 F.3d 141, 153 (1st Cir. 2006) (holding that employee's request to work remotely was "per se unreasonable" because his physical presence was "an essential function of his job . . . .").

In her opposition, plaintiff contends that "[n]o employer, especially one as large and wide-ranging as the EPA, can refuse to consider a work-at-home accommodation out of hand." Pl.'s Opp'n at 35.  First, this statement is erroneous, as even plaintiff's allegations in both her original and amended complaint reveal that she was accommodated and permitted to work from home on occasion.  Am. Compl. ¶¶ 11, 16.  Second, even if this statement addressed defendant's argument, which it does not, plaintiff fails to provide citations that support this statement. Plaintiff's citation to Humphrey v. Memorial Hosp. Ass'n, 239 F.3d 1128, 1136-37 (9th Cir. 2001), does not further her argument because Humphrey does not discuss whether an employer's size is relevant in the employer's consideration of a request to work at home.  At most, the Humphrey court noted that "[c]ourts have taken different approaches toward working at home as an accommodation" and determined it would follow the "approach taken by the EEOC in its Enforcement Guidance."  Id. at 1137 & n.15.  Importantly, as quoted by plaintiff, the Humphrey court recognized that "[w]orking at home is a reasonable accommodation when the essential functions of the position can be performed at home and a work at home arrangement would not cause undue hardship for the employer."  Id. at 1136 (emphasis added).  Nor does plaintiff's citation of Carr v. Reno, 23 F.3d 525, 530 (D.C. Cir. 1994)[18] support the proposition that size

---

[18]Plaintiff continues in her belief that defendant fails to quote the salient portion of the Carr decision, where the court stated that "that an essential function of any government job is an ability to appear for work (whether in the workplace or, in the unusual case, at home) . . . ." 23 F.3d at 530.  Pl.'s Opp'n at 26 & n.4.  Yet, plaintiff fails to cite the Carr court's opinion that it was "unreasonable" to ask the employer to "put up with" the plaintiff's "poor attendance" or to "refer an unqualified employee to

requires an employer to consider a work at home accommodation, particularly when that

accommodation would eliminate the essential functions of the employee's job.  Plaintiff here has

simply failed to demonstrate that her allegations "raise a right to relief above the speculative

level . . . ."  Twombly, 127 S. Ct. at 1964-65.

## VI.    PLAINTIFF CANNOT ESTABLISH A VIABLE CLAIM OF RETALIATION.[19]

Plaintiff contends that "EPA's contentions in opposing [her] retaliation claim range from

the fanciful to the absurd."  Pl.'s Opp'n at 35.  Yet, aside from these nonsubstantive comments,

plaintiff does little to nothing to explain to the Court why many of her allegations of retaliation

fail to assert that she suffered "materially adverse consequences" as required for such a claim.

Therefore, plaintiff has tacitly conceded defendant's argument that she has failed to assert any

"materially adverse consequences" as required for a claim of retaliation and the Court may grant

dismissal of many of the allegations contained in count II of the complaint on that basis alone.

Hopkins v. Women's Div., General Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C.

2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion

to dismiss addressing only certain arguments raised by the defendant, a court may treat those

arguments that the plaintiff failed to address as conceded.") (citing FDIC v. Bender, 127 F.3d 58,

67-68 (D.C. Cir. 1997)); see also United States v. Real Prop., Parcel No. 03179-005R, No. Civ.

---

another government agency for employment."  23 F.3d at 530.  Furthermore, while telecommuting is an
option the agency provides to some employees, that does not translate into a finding that such an option
was viable in plaintiff's situation, in light of the essential functions of her position.

[19]Plaintiff's complaint fails to provide defendant, or the Court, with notice of the claims she
alleges constitute her count of retaliation.  Rather, with the exception of the paragraphs pertaining to her
failure to accommodate count, plaintiff incorporates the entirety of the complaint's allegations in her
retaliation count, and merely asserts that defendant took "adverse employment actions against her, up to
and including proposing to terminate [her], and removing her from federal service."  Am. Compl. ¶ 65
(emphasis added).

A. 01-0706, 2003 WL 224053382 at *12 (D.D.C. Oct. 21, 2003); Bancoult v. McNamara, 227 F. Supp. 2d 144, 149 (D.D.C. 2002).

Even more troubling, plaintiff continues to assert her contention that "[n]o court has established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for the purposes of establishing a causal connection." Pl.'s Opp'n at 36. To do so, plaintiff continues to ignore District of Columbia Circuit precedent holding that an "eight or nine-month gap" between protected activity and the alleged retaliation is "far too long[,]" to establish causality. Mayers v. Laborers' Health & Safety Fund, 478 F.3d 364, 369 (D.C. Cir. 2007). See also Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case [of retaliation] uniformly hold that the temporal proximity must be 'very close[.] . . . Action taken (as here) 20 months later suggests, by itself, no causality at all.") (citations omitted). Ignoring this binding precedent, plaintiff does not address the Mayers decision. Instead, she cites to Hayes v. Shalala, 902 F. Supp. 259, 264 (D.D.C. 1995), in which the court held that because the employee did not apply for a position until two years after the settlement, the court would not "preclude the inference of causality . . . ." because that was the first time plaintiff was in fact vulnerable to retaliation. However, the Hayes decision pre-dates the Supreme Court's pronouncement that the temporal proximity must be "very close." Breeden, 532 U.S. at 273-74. Furthermore, assuming Hayes remains good law, no circumstances exist in this case, and plaintiff alerts the Court to none, that would warrant the court finding an exception to the requirement that the temporal proximity between plaintiff's alleged protected activity and the alleged retaliation

be very close.  For this reason, the other cases cited by plaintiff, from courts outside this district

and circuit, are similarly unhelpful.  Pl.'s Opp'n at 37.  While generally discussing the fact that

courts in other jurisdictions have found lack of temporal proximity alone does not defeat a

retaliation claim in the presence of "additional circumstances," id., plaintiff does not point the

Court to any allegations in her complaint that might constitute the "additional circumstances"

that she believes may extend the amount of time between the protected activity and the adverse

action from which retaliation may be inferred.  Here, assuming the Court considers actions that

have not been properly exhausted, there is no basis on which to infer a causal connection

between plaintiff's alleged prior EEO activity in 2005, her transfer in 2006, and her eventual

termination in 2007.

## CONCLUSION

For the foregoing reasons, as well as those set forth in his motion to dismiss the amended

complaint, defendant requests that plaintiff's complaint be dismissed in its entirety for failure to

state claims upon which relief can be granted.


Respectfully submitted,

/s/ Jeffrey A. Taylor
_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


/s/ Michelle N. Johnson
_____
MICHELLE N. JOHNSON, D.C. BAR # 491910

Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT

Of Counsel:

Nancy J. Dunham
United States Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Room 7454F
Washington, DC 20460